

Louis Pechman (LP-6395)
Berke-Weiss & Pechman LLP
488 Madison Avenue
New York, New York 10022
(212) 583-9500
*Attorneys for Plaintiffs*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
COSTIN DUMITRESCU, MARIN ALEXANDRU,
and JOSIP RICOV, on behalf of themselves
and all others similarly situated,

                      Plaintiffs,

      -against-

MR. CHOW ENTERPRISES, LTD., T.C. VENTURES,
INC., MC TRIBECA, LLC, MR. CHOW NEW
YORK ENTERPRISES, INC., WILDMAN
GROUP, INC., and MICHAEL CHOW,
individually,

                      Defendants.
------------------------------------------------------------X

MAY 0 7 2007

07 CV 3601 (PKL)

**COMPLAINT**

**COLLECTIVE ACTION**

**ECF CASE**

      Plaintiffs Costin Dumitrescu, Marin Alexandru, and Josip Ricov (collectively referred to herein as "plaintiffs"), by their attorneys, Berke-Weiss & Pechman LLP, complaining of defendants Mr. Chow Enterprises Ltd., Mr. Chow of New York Enterprises, Inc., T.C. Ventures, Inc., MC Tribeca, LLC, Wildman Group, Inc., and Michael Chow (collectively referred to herein as "defendants"), allege:

### NATURE OF THE ACTION

      1.    This action is brought to recover unpaid minimum wages, unlawfully expropriated tips, unpaid overtime, and other monies pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law § 190 *et seq.* ("NYLL"), and for damages for intentional infliction of emotional distress and

assault and battery pursuant to New York common law, on behalf of employees who worked for defendants at their "Mr. Chow" restaurants in New York City.

2.  Michael Chow is a self-described "Renaissance Man," a "collector," and a "restaurateur." Among his business ventures are "Mr. Chow" Chinese restaurants in Manhattan on 57th Street ("Mr. Chow 57th Street") and in Tribeca ("Mr. Chow Tribeca"). Both restaurants dip into their employees' tips to pay managers, require employees to purchase their uniforms, and fail to pay employees in accordance with state and federal law. Michael Chow's website touts that "the movements of his waiters ... are parts in an elaborate symphony of which he is, ultimately, the conductor." But Michael Chow is a conductor with an iron baton, exhorting his waitstaff that he is "building an army." Although employees suffer many day-to-day indignities at the hands of Michael Chow, this Complaint seeks recompense in tort on behalf of Costin Dumitrescu ("Dumitrescu") for Michael Chow's particularly horrifying humiliation of Dumitrescu.

3.  For at least six years prior to the filing of this Complaint – the statute of limitations under the New York State Labor Law – continuing to the present, defendants have failed to compensate their waiters at the federal and state minimum wage, unlawfully appropriated part of plaintiffs' tips, made unlawful deductions from plaintiffs' wages, and failed to pay their waiters statutorily prescribed overtime wages.

4.  Plaintiffs seek injunctive and declaratory relief against defendants' unlawful actions, compensation and credit for the difference between the hourly minimum wage and the hourly wages actually paid to plaintiffs, unpaid tips, unpaid overtime wages, liquidated damages, interest, attorneys' fees and costs pursuant to the FLSA and the NYLL, punitive damages, and damages for emotional distress on behalf of plaintiff Dumitrescu.

## JURISDICTION

5. This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over plaintiffs' claims under the New York State Labor Law and New York common law pursuant to 28 U.S.C. §§ 1332 and 1367.

## VENUE

6. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, as the location of the restaurants where plaintiffs worked is in the Southern District of New York.

## THE PARTIES

**Plaintiffs**

7. Costin Dumitrescu resides at 602 Grandview Avenue, Ridgewood, New York, 11385. Dumitrescu was a busboy at Mr. Chow 57th Street from September of 1995 until 1996, as a waiter from 1996 until 1999, and as a captain from 1999 until February of 2006, when he transferred to Mr. Chow Tribeca as a captain for its opening. He was terminated on July 20, 2006.

8. Marin Alexandru ("Alexandru") resides at 146 Mulberry Street, Apartment 6, New York, New York, 10013. Alexandru was a captain at Mr. Chow 57th Street from 1999 until May of 2006, when he transferred to Mr. Chow Tribeca. He resigned in February 2007.

9. Josip Ricov ("Ricov") resides at 3211 31st Avenue, Astoria, New York, 11102. Ricov was a bartender at Mr. Chow Tribeca from October 21, 2006 until his termination on March 19, 2007.

10. Plaintiffs were defendants' employees within the meaning of the Fair Labor Standards Act and the New York Labor Law, and have worked for defendants'

New York restaurants as employees subject to the tip credit provisions of the NYLL and the FLSA.

**Defendants**

11. Mr. Chow Enterprises, Ltd. is a California limited partnership located at 9538 Brighton Way Suite 316, Beverly Hills, California, 90210.

12. T.C. Ventures, Inc. is a California corporation located at 344 N. Camden Drive, Beverly Hills, California, 90210.

13. MC Tribeca, LLC is a New York domestic limited liability company located at 121 Hudson Street, New York, New York, 10013.

14. Mr. Chow New York Enterprises, Inc. is a New York domestic business corporation located at 324 East 57th Street, New York, New York, 10022.

15. Wildman Group, Inc. is a California corporation located at 344 N. Camden Drive, Beverly Hills, California, 90210.

16. Defendant Michael Chow resides at 133 South Mapleton Drive, Los Angeles, California, 90024. Upon information and belief, at all relevant times herein, Michael Chow was the owner of Mr. Chow Enterprises, Ltd., T.C. Ventures, Inc., MC Tribeca, LLC, Mr. Chow New York Enterprises, Inc., and Wildman Group, Inc.

17. Mr. Chow Enterprises Ltd., T.C. Ventures, Inc., MC Tribeca, LLC, Mr. Chow New York Enterprises, Inc., Wildman Group, Inc., and Michael Chow are a single and joint employer inasmuch as they have various interrelationships and control over one another, and possess, *inter alia*, interrelation of operations, centralized control of labor relations, common management, and common ownership and financial control.

18. The defendants own and operate two Mr. Chow restaurants in Manhattan, Mr. Chow 57th Street, located at 324 East 57th Street, New York, New York, 10022, and Mr. Chow Tribeca, located at 121 Hudson Street, New York, New York, 10013.

## COLLECTIVE ACTION ALLEGATIONS

19.   The claims in this Complaint arising out of the FLSA are brought by plaintiffs on behalf of themselves and similarly situated persons (*i.e.* captains, waiters, bartenders, and busboys), who are current and former employees of Mr. Chow 57th Street and Mr. Chow Tribeca, since May 7, 2004, who elect to opt-in to this action (the "FLSA Collective").

20.   The FLSA Collective consists of approximately one hundred members who have been victims of defendants' common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them minimum wage, tips that they earned, overtime, and other wages.

21.   The FLSA Collective consists of employees who, during their employment at Mr. Chow 57th Street and Mr. Chow Tribeca, fell into the category of "tipped employees" who customarily and regularly earn more than $30.00 per month in tips and were required by defendants to participate in a tip-pooling scheme at Mr. Chow. 29 U.S.C. § 203(t).

22.   As part of its regular business practice, defendants have intentionally, willfully, and repeatedly harmed plaintiffs and the FLSA Collective by engaging in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter alia*, the following:

   a.  depriving waiters of tips that they earned;

   b.  improperly taking a "tip credit" for its captains, waiters, bartenders, and busboys;

   c.  improperly failing to reimburse its waiters for their uniforms and for required uniform maintenance costs;

   d.  failing to pay employees at minimum wage for time worked including mandatory meetings, time spent shopping for goods for the restaurants,

and mandatory performance of jobs outside of their waitstaff responsibilities; and

e. redistributing portions of the tips earned by its service staff to managers and hostesses who were not entitled to tips under the FLSA and the NYLL.

23. Defendants have engaged in its unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA.

24. Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant damages to plaintiffs and the FLSA Collective.

25. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to defendants, are readily identifiable by defendants, and locatable through defendants' records. These similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 216(b).

### THE LAW REGARDING "TIPPED EMPLOYEES"

26. The FLSA and the NYLL allow employers of "tipped employees" to pay their tipped employees at a rate below the federal and state minimum wages.

27. The FLSA and the NYLL provide that in order to be eligible for this "tip credit," or "tip allowance," employers of tipped employees must allow employees to keep all the tips that they receive.

28. These rules, however, do not allow managers or individuals who do not have sufficient contact with customers, to share in the tips that the "tipped employees" share in.

6

29.    The NYLL and the FLSA do allow employees to participate in a "tip pool," where tipped employees pool all of their tips together and then redistribute them amongst themselves as they choose, so long as the tip pool is voluntary. The tip pool is unlawful, however, where that tip pool is foisted upon the waitstaff by the restaurant and/or where a non-tipped employee participates in the pool.

### THE TIP POOL AT MR. CHOW

30.    At any given time, Mr. Chow 57th Street and Mr. Chow Tribeca each employ approximately twenty-five (25) captains, waiters, bartenders, and busboys. Defendants, including Michael Chow, established and imposed an involuntary tip-pooling program upon its waiters, requiring them to share a percentage of their tips with other workers at the restaurant.

31.    The tip pools at Mr. Chow 57th Street and Mr. Chow Tribeca include a "point system" that was established by Michael Chow himself. Under the point system, employees are given a certain number of points based on their position and how long they have been working at the restaurant. The typical allocation of points set up by Michael Chow for his New York restaurants was 20 for managers, 19 for assistant managers, 17 for captains, 12-16 for waiters, 6-10 for busboys, 12-16 for bartenders, and 3 for hosts or hostesses. The number of points any employee has on a particular evening determines, in turn, what percentage of the tip pool they will receive for that evening.

32.    The point system is utilized at Mr. Chow 57th Street and Mr. Chow Tribeca as a vehicle to threaten and discipline employees. Management deducted points from its waitstaff for, *inter alia*, being late to work, forgetting to clock in or out, not listening attentively to Michael Chow's instructions, making a mistake when entering orders into the computer, speaking out of turn, failing to keep up with their

7

"dot" (a side job which could include, for example, scrubbing the bathrooms or ordering the linens), failing to have a perfectly starched uniform, or failing to sell the required quota of particular items on the menu. The time span that these point deductions would last varied in length, but at times could be as long as a month.

33.     At Mr. Chow 57th Street and Mr. Chow Tribeca, managers who do not fall within the category of "tipped employees" should not have received *any* share from the tip pool. Nonetheless, these managers, all of whom had the power to hire and fire employees, and whose uniform consisted of distinctive black suits, were unlawfully allocated the greatest amount of points from the tip pool. Defendants thereby were effectively paying the wages of managers, who were non-tipped employees, from the tips of plaintiffs and other similarly situated employees.

34.     The hosts/hostesses at Mr. Chow 57th street and Mr. Chow Tribeca also share in the tip pool even though they are not "tipped employees" and do not provide service to customers.

35.     By these and other acts, defendants have taken gratuities belonging to the waiters and unlawfully diverted them to managers and other employees who are not entitled to share in the tip pool at the restaurants.

36.     Because defendants established an illegal tip-pooling scheme at Mr. Chow 57th Street and Mr. Chow Tribeca, they were not entitled to reduce the minimum wages of plaintiffs and the other captains, waiters, bartenders, and busboys employed at the restaurants by applying the tip credit allowance that is available under the FLSA and the NYLL.

37.     Defendants' improper application of the tip credit deprives plaintiffs and other similarly situated employees at Mr. Chow 57th Street and Mr. Chow Tribeca of their statutory minimum wage under the FLSA and the NYLL.

38. Defendants also miscalculated and failed to pay plaintiffs and similarly situated employees the full overtime rate they were entitled to receive under the FLSA and the NYLL.

39. Defendants have also failed to properly compensate plaintiffs for time worked, including, *inter alia*, mandatory meetings, time spent on "guard duty" (answering the phone at the restaurants), administrative duties, and time spent shopping for goods and providing services for the restaurants that are outside of waitstaff related duties.

### THE ABUSIVE MANAGEMENT TECHNIQUES OF MICHAEL CHOW

40. Michael Chow demanded cult-like attention when he spoke. One of his frequently used management techniques was to approach a waiter, use two fingers to point at his trademark owl glasses and demand that the waiter make eye contact with him. At staff meetings, Michael Chow often yelled, "Are you with me?" When the waiters responded "Yes Sir!" it inevitably was not with sufficient enthusiasm for Michael Chow, so he would continue to scream "Are you with me? Are you with me?" Once the "Yes Sir" was at a fevered pitch, Michael Chow finally moved on to another topic.

41. If a waiter did not keep eye contact with Michael Chow at all possible moments, or if Michael Chow wanted to get a waiter's immediate attention, he would tap or lightly slap the waiter on the chin or on the back of the head.

42. Michael Chow utilized degradation as a management technique. For example, on one occasion, Michael Chow dramatically scribbled with his pen on the formal uniforms of plaintiff Alexandru and two managers, as an act of humiliation. He then sent Alexandru and the managers out to the restaurant to wait on customers with writing on their uniforms.

**Singling Out Plaintiff Dumitrescu**

43.     Throughout his almost 11 years as a waiter at both Mr. Chow locations, Dumitrescu performed extra services without proper compensation. The services that Michael Chow required from Dumitrescu included performing electrical work in the restaurants, drafting detailed abstracts of furniture, utensils, and rooms at the restaurants, painting walls, taping windows, patching floor tiles, changing light bulbs, fixing holes in the floor, and other maintenance tasks.

44.     Notwithstanding this extra work and Dumitrescu's exceptional service and loyalty to the restaurants, Michael Chow sought out Dumitrescu as his proverbial whipping boy. Among the demeaning acts Michael Chow took against Dumitrescu was to make him go outside of Mr. Chow Tribeca and sweep cigarette butts from the street. Michael Chow warned Dumitrescu that if a cigarette butt were found in front of the restaurant, his punishment would be three points for three months docked from his share of the tip pool. Because of this ongoing intimidation, Dumitrescu not only swept both North Moore Street and Hudson Street in front of Mr. Chow Tribeca (which is located on the corner where the two streets cross), but also crossed the street and swept the sidewalk in front of the business on the other side of North Moore Street.

45.     It was against this backdrop of abuse that the abject humiliation of Dumitrescu on or about May 18, 2006 occurred. On that day plaintiff Dumitrescu was running late to a waitstaff meeting at Mr. Chow Tribeca that was called by Michael Chow. Dumitrescu, who was returning from a shopping errand for the restaurant, called ahead and told a manager that he would be late to the meeting. Unbeknownst to Dumitrescu, Michael Chow announced to the approximately 30 to 40 waitstaff who were already at the meeting in the private room downstairs that he was going to make

an example out of Dumitrescu when he arrived. He told the staff to "wait and see" what happened when Dumitrescu arrived.

46. When Dumitrescu arrived, he apologized to Michael Chow for being late. Nonetheless, Michael Chow berated and taunted Dumitrescu in front of the other staff because of his lateness. Then Michael Chow ordered Dumitrescu to lie on the wooden floor in the middle of the staff meeting. Dumitrescu obeyed Michael Chow's command. He proceeded to lie on his back, on the floor, placing a cloth napkin underneath the back of his head. His coworkers were sitting in a U-shaped arrangement while Dumitrescu was lying on the floor in front of them the middle of the "U."

47. During the ensuing 30 to 40 minutes remaining in the meeting, Michael Chow paced around the middle of the U, discussing restaurant issues such the quotas of different foods the waiters should try to sell in the days ahead. Michael Chow periodically walked up to Dumitrescu as he lay on the floor, and pretended to kick Dumitrescu in order to make Dumitrescu flinch in fear. On a few occasions, Michael Chow actually kicked Dumitrescu while he was lying on the ground, albeit not with full force.

48. Michael Chow's humiliation of Dumitrescu conveyed to the rest of the staff, from managers to busboys, that no employee – not even a loyal 11-year veteran like Dumitrescu – would be spared abuse if any mistake were made.

49. As a result of Michael Chow's intentional extreme and outrageous conduct, Dumitrescu has suffered severe emotional distress.

## OTHER VIOLATIONS

**Uniform Purchases**

50. Defendants required captains to purchase their cream colored jackets, which matched the cream colored interior of the restaurant, at $350 each, and would

only reimburse the waiters for 50% of these purchases. Captains were required to pay for these jackets approximately three times per year.

**Guard Duty and "Dots"**

51. The waitstaff was required to report to the restaurants on Saturdays, hours before the restaurant opens, to perform non-waiter duties, called "dots," which included ordering linen, administrative duties, taking out the garbage, and scrubbing the restrooms clean. Michael Chow told the waitstaff that they needed to attend to their dots twenty-four hours a day, seven days a week, even on days they did not work. If they were not physically in the restaurant to take care of their dot, they would need to get another waiter to do it for them.

52. The waiters were also set up on a rotating schedule, seven days per week, where one waiter was required to go to the restaurant approximately five and a half hours before their shift starts, to answer the phones and take reservations. After the waiter finished his guard duty, he would need to take care of his dots.

53. Defendants unlawfully took a tip credit or tip allowance for all of these extra hours worked which had nothing to do with table service of customers.

### FIRST CLAIM
### Fair Labor Standards Act – Unpaid Minimum Wage

54. Plaintiffs repeat and reallege paragraphs 1 through 53 as if fully set forth herein.

55. Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

56. Defendants were required to pay to plaintiffs and the FLSA Collective the applicable federal minimum wage rate.

57. Defendants were not eligible to avail itself of the federal tipped minimum wage rate under the FLSA because, *inter alia*:

    a. Defendants were required, to but failed to inform plaintiffs and the FLSA Collective of the provisions of subsection 203(m) of the FLSA, 29 U.S.C. § 203(m); and

    b. Defendants unlawfully redistributed portions of the tips received by plaintiffs and the FLSA Collective to employees in positions that do not customarily and regularly receive tips, in violation of the FLSA, 29 U.S.C. § 203(m) and supporting regulations.

58. Defendants failed to pay plaintiffs and the FLSA Collective the minimum wages to which they are entitled to under the FLSA. 29 U.S.C. § 206.

59. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of the FLSA Collective.

60. As a result of defendants' willful violations of the FLSA, the FLSA Collective suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM
### New York Labor Law – Unpaid Minimum Wage

61. Plaintiffs repeat and reallege paragraphs 1 through 60 as if fully set forth herein.

62. At all times relevant herein, plaintiffs have been employees and defendants have been employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting New York State Department of Labor Regulations, and at all times relevant, employed plaintiffs and the FLSA Collective.

63. Defendants were not allowed to avail themselves of the NYLL tipped minimum wage because, *inter alia*, defendants did not permit plaintiffs and the FLSA Collective to retain the entirety of their tips.

64. Defendants failed to pay plaintiffs and the FLSA Collective the minimum wages to which they are entitled under the NYLL.

65. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay the plaintiffs and the FLSA Collective minimum hourly wages.

66. As a result of defendants' violations of the NYLL, plaintiffs and the members of the FLSA Collective are entitled to recover their unpaid wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### THIRD CLAIM
### Fair Labor Standards Act – Unpaid Overtime

67. Plaintiffs repeat and reallege paragraphs 1 through 66 as if fully set forth herein.

68. Defendants were required to pay plaintiffs and the FLSA Collective no less than one and one-half times the regular rate at which plaintiffs were employed for all hours worked in excess of forty (40) hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207 *et seq*.

69. Defendants miscalculated and failed to pay plaintiffs and the FLSA Collective the overtime wages to which they are entitled under the FLSA.

70. Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay plaintiffs and the FLSA Collective the correct amount of overtime wages.

71. Due to defendants' violations of the FLSA, plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## FOURTH CLAIM
### New York Labor Law – Unpaid Overtime

72. Plaintiffs repeat and reallege paragraphs 1 through 71 as if fully set forth herein.

73. Under the NYLL and supporting New York State Department of Labor Regulations, defendants were required to pay plaintiffs and the FLSA Collective time and one half of the regular rate for all hours they worked in excess of forty (40).

74. Defendants miscalculated and failed to pay plaintiffs and the FLSA Collective the overtime wages to which they were entitled under the NYLL.

75. Defendants have wilfully violated the NYLL by knowingly and intentionally failing to pay the plaintiffs and the FLSA Collective the correct amount of overtime wages.

76. Due to defendants' willful violations of the NYLL, plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## FIFTH CLAIM
### New York Labor Law - Unlawful Deductions

77. Plaintiffs repeat and reallege paragraphs 1 through 76 as if fully set forth herein.

78. New York Labor Law § 193(1) prohibits employers from making any deductions from an employee's wages except for those permitted by law.

79. New York Labor Law § 196-d prohibits any employer or his agents, including managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity of any charge purported to be a gratuity for an employee.

80. Defendants unlawfully redistributed tips from their captains, waiters, bartenders, and busboys to non-tipped employees, including management staff.

81. Defendants unlawfully required captains to purchase uniforms, i.e., cream colored jackets.

82. Defendants unlawfully deducted points from tipped employees.

83. Defendants' knowing and intentional demand and retention of a portion of the waiters' tips were willful violations of the NYLL and supporting Department of Labor Regulations.

84. As a result of defendants' willful violations of the NYLL, plaintiffs and the FLSA Collective are entitled to recover from defendant their unpaid wages, reasonable attorneys' fees, and pre-judgment and post-judgment interest.

### SIXTH CLAIM
### Intentional Infliction of Emotional Distress
### (On behalf of Plaintiff Dumitrescu)

85. Plaintiffs repeat and reallege paragraphs 1 through 84 as if fully set forth herein.

86. Michael Chow engaged in extreme and outrageous acts by, *inter alia*, forcing Dumitrescu to lie on the floor of the restaurant for over half an hour during a staff meeting.

87. Michael Chow's conduct was so extreme and outrageous that it transcended the bounds of decency.

88. Michael Chow engaged in this conduct with the intent to cause severe emotional distress to Dumitrescu.

89. As a result of Michael Chow's atrocious and intolerable actions, Dumitrescu has suffered severe emotional distress.

### SEVENTH CLAIM
### Assault and Battery
### (On behalf of Plaintiff Dumitrescu)

90. Plaintiffs repeat and reallege paragraphs 1 through 89 as if fully set forth herein.

91. On or about May 18, 2006, Michael Chow intentionally made offensive physical contact with Dumitrescu.

92. Michael Chow made the offensive physical contact with Dumitrescu intending to injure his mind and feelings.

93. Michael Chow did not have consent from Dumitrescu to make any offensive physical contact with his person.

94. Michael Chow also placed Dumitrescu in fear of imminent offensive contact.

95. The actions of Michael Chow were willful, intentional, and unwarranted, and without any just cause or provocation.

96. As a result of Michael Chow's actions, Dumitrescu has suffered emotional injuries, including insult, indignity, mental suffering, and fright.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs on behalf of themselves and the FLSA Collective, respectfully request that this Court enter a judgment:

    a. to authorize the issuance of notice at the earliest possible time to all defendants' employees who were employed during the three years immediately preceding the filing of this action. This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

    b. to declare that defendants have violated the tip pool provisions of the FLSA and the NYLL;

    c. to declare that defendants have violated the overtime provisions of the FLSA and the NYLL;

    d. to declare that defendants have violated the unlawful deductions provisions of the NYLL;

      e.    to declare that defendants' violations of the FLSA were willful;

      f.    to disgorge from defendants and order that the defendants remit back the amount of the tip credit deducted from the wages of plaintiffs and the FLSA Collective;

      g.    to award plaintiffs and the FLSA Collective damages for the difference between the full hourly wage as mandated by the FLSA and the NYLL, and the hourly wages actually paid to the plaintiffs and the FLSA Collective for the hours they worked;

      h.    to award plaintiffs and the FLSA Collective damages for unpaid wages and tips which were unlawfully diverted to non-waitstaff;

      i.    to award plaintiffs and the FLSA Collective damages for unpaid overtime wages;

      j.    to award plaintiffs and the FLSA Collective damages for all unauthorized deductions under the NYLL;

      k.    to award plaintiffs and the FLSA Collective liquidated damages under the FLSA and the NYLL;

      l.    if liquidated damages are not awarded, then the Court should award, in the alternative, prejudgment interest;

      m.    to award plaintiffs damages for the amount that defendants unlawfully required them to pay for their uniforms;

      n.    to award plaintiff Dumitrescu damages for his injuries due to the intentional infliction of emotional distress;

      o.    to award plaintiff Dumitrescu damages for the intentional assault and battery inflicted upon him;

      p.    to award plaintiff Dumitrescu punitive damages for intentional infliction of emotional distress, assault, and battery;

  q. to award plaintiffs and the FLSA Collective reasonable attorneys fees' and costs pursuant the FLSA and the NYLL; and

  r. to award monetary, emotional distress, and punitive damages against defendants in the amount of $5 million dollars.

### DEMAND FOR TRIAL BY JURY

  Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury in this action.

Dated: New York, New York
    May 7, 2007

            BERKE-WEISS & PECHMAN LLP

            By: _____
              Louis Pechman (LP-6395)
              488 Madison Avenue - 11th Floor
              New York, New York 10022
              (212) 583-9500
              *Attorneys for Plaintiffs*