Louis Pechman (LP-6395)
Berke-Weiss & Pechman LLP
488 Madison Avenue
New York, New York 10022
(212) 583-9500
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

COSTIN DUMITRESCU, MARIN ALEXANDRU,
and JOSIP RICOV, on behalf of themselves
and all others similarly situated,                                      **07 Civ 3601 (PKL) (HBP)**

               Plaintiffs,

       -against-                                                           **ECF CASE**

MR. CHOW ENTERPRISES, LTD., T.C. VENTURES,
INC., MC TRIBECA, LLC, MR. CHOW NEW
YORK ENTERPRISES, INC., WILDMAN
GROUP, INC., and MICHAEL CHOW,
individually,

               Defendants.

-------------------------------------------------------X


# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR COLLECTIVE ACTION CERTIFICATION


**BERKE-WEISS & PECHMAN LLP**
**488 Madison Avenue – 11th Floor**
**New York, New York 10022**
**(212) 583-9500**

*Attorneys for Plaintiffs*

Louis Pechman (LP-6395)
Berke-Weiss & Pechman LLP
488 Madison Avenue
New York, New York 10022
(212) 583-9500
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

| | | |
|---|---|---|
| COSTIN DUMITRESCU, MARIN ALEXANDRU, and JOSIP RICOV, on behalf of themselves and all others similarly situated, | : : : | 07 Civ 3601 (PKL) (HBP) |
| | : | |
| Plaintiffs, | : : : : | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR COLLECTIVE ACTION CERTIFICATION** |
| -against- | : : | |
| | : | **ECF CASE** |
| MR. CHOW ENTERPRISES, LTD., T.C. VENTURES, INC., MC TRIBECA, LLC, MR. CHOW NEW YORK ENTERPRISES, INC., WILDMAN GROUP, INC., and MICHAEL CHOW, individually, | : : : : : : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------------X

## INTRODUCTION

This Memorandum of Law is submitted by plaintiffs in support of their Motion

for Collective Action Certification, pursuant to 29 U.S.C. § 216(b), for a class consisting

of all persons who have worked as a captain, waiter, bartender, or busboy at Mr. Chow

restaurants located at 324 East 57th Street, New York, New York, 10022 ("Mr. Chow

57th Street") and 121 Hudson Street, New York, New York, 10013 ("Mr. Chow Tribeca")

(collectively hereinafter "Mr. Chow") between May 7, 2004 and the date of final

judgment of this matter.

## PROCEDURAL HISTORY

On May 7, 2007, plaintiffs Costin Dumitrescu ("Dumitrescu"), Marin Alexandru ("Alexandru"), and Josip Ricov ("Ricov") (hereinafter collectively "plaintiffs"), on behalf of themselves and others similarly situated, filed this action alleging violations of the minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law § 190 *et seq.* ("NYLL").

Pursuant to the Court's instructions during the October 4, 2007 preliminary conference in this matter, plaintiffs now move for an order certifying this case as a collective action, approving their proposed collective action notice, and compelling defendants to immediately disclose the names, last known addresses, telephone numbers, dates of employment, and job title of each former and current captain, waiter, bartender, and busboy who worked at Mr. Chow from May 7, 2004 to the present.

## STATEMENT OF FACTS

Plaintiff Dumitrescu was a busboy at Mr. Chow 57th Street from 1995 until 1996, a waiter from 1996 until 1999, and a captain at Mr. Chow 57th Street and Mr. Chow Tribeca from 1999 until February 2006. (Compl. ¶ 7.) Plaintiff Alexandru was a captain at Mr. Chow 57th Street and Mr. Chow Tribeca from 1999 until February 2007. (Compl. ¶ 8.) Plaintiff Ricov was a bartender at Mr. Chow Tribeca from 2006 until March 2007. (Compl. ¶ 9.) All of these plaintiffs worked for Mr. Chow as employees subject to the tip credit provisions of the FLSA and the NYLL. (Compl. ¶ 10.) All of these plaintiffs were deprived of tips that they earned at Mr. Chow, not paid at full minimum wage for time worked and were not paid the correct overtime premium for the hours they worked in excess of 40 hours per week.

At any given time, Mr. Chow 57th Street and Mr. Chow Tribeca each employ approximately twenty-five (25) captains, waiters, bartenders, and busboys. Defendants,

including Michael Chow, established and imposed an involuntary tip-pooling program upon its waitstaff, requiring them to share a percentage of their tips with other workers at the restaurant. The tip pools at Mr. Chow include a "point system" that was established by owner Michael Chow himself. Under the point system, employees are given a certain number of points based on their position and how long they have been working at the restaurant. The typical allocation of points set up by Michael Chow for his New York restaurants was 20 for managers, 19 for assistant managers, 17 for captains, 12-16 for waiters, 6-10 for busboys, 12-16 for bartenders, and 3 for hosts or hostesses. The number of points any employee has on a particular evening determines, in turn, what percentage of the tip pool they will receive for that evening.

At Mr. Chow, managers who do not fall within the category of "tipped employees" under the FLSA should not have received *any* share from the tip pool. Nonetheless, these managers, who were responsible for the management of the restaurant (including the hiring, firing, and direction of employees), were unlawfully allocated the *greatest* amount of points from the tip pool. Defendants thereby were effectively paying the wages of managers, who were non-tipped employees, from the tips of plaintiffs and other similarly situated employees. The hosts/hostesses at Mr. Chow also share in the tip pool even though they are not "tipped employees" and do not provide service to customers.

# ARGUMENT

## POINT I

### PLAINTIFFS HAVE MET THE MINIMAL BURDEN NECESSARY FOR THIS COURT TO GRANT CERTIFICATION OF A COLLECTIVE ACTION

**A.      Tip-Pooling at Mr. Chow**

Mr. Chow pays its employees less than minimum wage, taking a purported "tip credit" against the minimum wage under the FLSA. Mr. Chow also requires its managers, captains, waiters, bartenders, and busboys to participate in a tip pool arrangement. The tip pool that Mr. Chow waiters are required to participate in contains participants whose primary service to Mr. Chow is management, rather than traditional waiter duties which entail interaction with customers. By paying these employees from money diverted from the tip pool, Mr. Chow is essentially paying its management from the tips that are left by Mr. Chow customers for the captains, waiters, bartenders, and busboys.

The FLSA provides that in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay their employees the full hourly minimum wage. 29 U.S.C. §§201 *et seq.*, (2000). Because Mr. Chow established an illegal tip-pooling scheme at its restaurants, it was not entitled to reduce the minimum wages of plaintiffs and the other captains, waiters, bartenders, and busboys employed at Mr. Chow by applying the tip credit allowance that is available under the FLSA. As such, Mr. Chow's improper application of the tip credit deprives plaintiffs and other captains, waiters, bartenders, and busboys employed or previously employed at Mr. Chow of their statutory minimum wage under the FLSA.

4

## B.    The Collective Action

Under The FLSA, employees may bring a collective action "[on] behalf … of themselves and other employees similarly situated." 29 U.S.C. §216(b). The collective-action procedure allows for the efficient adjudication of similar claims, so "similarly situated" employees, whose claims are often small and not likely to be brought on an individual basis, may join together to prosecute their claims. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). In order to participate in a collective action, an employee must "opt-in," meaning that an individual must consent in writing to join the suit and this consent must be filed with the Court. *Damassia v. Duane Reade, Inc.*, 04 Civ. 8819 (GEL), 2006 U.S. Dist. LEXIS 73090, at *7 (S.D.N.Y. Oct. 5, 2006), *Hoffman-La Roche*, 493 U.S. at 168.

The Second Circuit has long recognized that FLSA cases should, where possible, be certified as collective action, in light of "the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interests of the courts in avoiding multiplicity of suits." *Braunstein v Eastern Photographic Laboratories, Inc.*, 600 F.2d 335, 336 (2d Cir. 1978). Court-supervised notice is also the preferred method for managing this notification process because (a) it allows the court to set deadlines to advance the disposition of the action; and (b) it protects plaintiffs' claims from expiring under the statute of limitations. *Hoffman-La Roche*, 493 U.S. at 172; *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997). Court-supervised notice can also obviate disputes between the parties regarding the content of the notice. *Hoffman-La Rouche*, 493 U.S. at 172 ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed.")

## C.    Certifying this Case as a Collective Action

In order for a collective action to be certified, the court must first examine the plaintiffs' pleadings, affidavits, or declarations to determine whether the named plaintiffs and the putative class members are similarly situated. *Anglada v. Linens 'N Things, Inc.*, 2007 U.S. Dist LEXIS 39105, at *12 (S.D.N.Y. Apr. 26, 2007) (plaintiff can meet standard by "relying on his or her own pleadings, affidavit, or declaration, and the affidavits or declarations of other prospective class members.") The "focus of this inquiry ... is not on whether there has been an actual violation of law ... in order to satisfy this standard, the named plaintiff need only demonstrate a 'factual nexus' between his or her situation and the situation of other current and former employees." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005). Moreover, "courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management." *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997).

The standard for authorizing notice is extremely low under 29 U.S.C. § 216(b), requiring a "modest showing sufficient to demonstrate that he and the potential plaintiffs together were victims of a common policy or plan that violated the law." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (citations omitted); *Hoffman*, 982 F. Supp at 261. The standards associated with Rule 23 class action certification have no bearing on and are much more stringent than the standards for the certification of a collective action. *Id.* at 263 (citing cases). In *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998), this Court held that named plaintiffs in an FLSA action can meet this burden "by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law ... The burden on plaintiffs is not a stringent one." *See also Sipas v.*

6

*Sammy's Fishbox, Inc.*, 2006 U.S. Dist. LEXIS 24318, at *6 (S.D.N.Y. Apr. 24, 2006) ("at this prediscovery stage in the litigation, the inquiry is 'less stringent than the ultimate determination that the class is properly constituted.'"). As Judge Crotty also recently noted, "[a]t this juncture - - also termed the 'notice stage' - - the court applies a 'fairly lenient standard' and (when it does so) typically grants 'conditional certification.'" *Torres v. Gristede's Operating Corp.*, 2006 U.S. Dist. LEXIS 74039, at *23 (S.D.N.Y. Sept. 28, 2006) (quoting *Moss v. Crawford & Co.*, 201 F.R.D. 398, 409 (W.D. Pa. 2000)). Moreover, the determination of whether other employees are indeed similarly situated is "merely preliminary" and can be reconsidered at a later stage. *Ayers v. SGS Control Services*, 2004 U.S. Dist. LEXIS 25646, at *14 (S.D.N.Y. Dec. 21, 2004).

Since the Supreme Court's decision in *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-73 (1989), courts in this Circuit have routinely granted 216(b) certification and notice in FLSA collective actions. *See, e.g., Khalil et al. v. The Original Homestead Restaurant, Inc., d/b/a Old Homestead, et al.*, No. 07 CV 695, 2007 U.S. Dist. LEXIS 70372 (S.D.N.Y. Aug. 9, 2007) (RJH); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 LEXIS 74039 (S.D.N.Y. Sept. 29, 2006); *Duchene et al. v. Michael L. Cetta, Inc. d/b/a Sparks Steak House*, No. 06 CV 4576 (S.D.N.Y.) (PAC); *Damassia*, 2006 U.S. Dist. LEXIS 73090, at *9; *Masson v. Ecolab, Inc.*, 2005 U.S. Dist. LEXIS 18022, at *38 (S.D.N.Y. Aug. 17, 2005); *Patton v. Thomason Corp.*, 364 F. Supp. 2d 263 (E.D.N.Y. 2005); *Scholtisek v. The Eldre Corp.*, 229 F.R.D. 381 (W.D.N.Y. 2005); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003); *Jacobsen v. Stop & Shop Supermarket Co.*, 2003 U.S. Dist. LEXIS 7988 (S.D.N.Y. 2003); *Harrington v. Educ. Mgmt. Corp.*, 2002 U.S. Dist. LEXIS 10966, at *4 (S.D.N.Y. June 18, 2002); *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998); *Hoffman*, 982 F. Supp. at 961.

7

Once the court determines that potential members are similarly situated, it "conditionally certifies" the collective action and Court-authorized notice is sent to potential collective-action class members, who may elect to "opt-in" under §216(b) by filing written consents. The action then proceeds as a collective action throughout the discovery process. *See Masson*, 2005 U.S. Dist. LEXIS 18022, at *39 (*citing Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)).

### D.    Plaintiffs Have Met Their Minimal Burden

Courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs are similarly situated. *Damassia*, 2006 U.S. Dist. LEXIS 73090 at *4, 12, 15 ("[T]he merits of plaintiffs' claims need not be resolved at this stage ..."); *see also, Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("the focus is not on whether there has been a violation of the law, but on whether the proposed plaintiffs are 'similarly situated' with respect to their allegations ... "); *Mazur v. Olek Lejbzon & Co.*, 2005 U.S. Dist. LEXIS 30321, at *13 (S.D.N.Y. Nov. 30, 2005) ("Plaintiff need not show an actual violation of the law ... "); *Hoffman*, 982 F. Supp. at 262 ("the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here"); *Krueger v. New York Tel. Co.*, 1993 U.S. Dist. LEXIS 9988, at *6 (S.D.N.Y. 1993) ("even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in the case"). Inasmuch as the merits of the claim are not weighed at the notice stage, a potential need for "extensive" individual discovery does not prevent notice from going out. *Masson*, 2005 U.S. Dist. LEXIS 18022, at *42; *Hoffman*, 982 F. Supp. at 262 (the court need not wait for defendant to complete its discovery or make dispositive motions before authorizing notice). In lieu of extensive individualized

8

discovery, courts often rely solely upon the allegations in a complaint supported by declarations to determine whether plaintiff and potential opt-ins are "similarly situated." *See Gjurovich*, 282 F. Supp. 2d at 104.

Here, the plaintiffs have satisfied their burden to demonstrate a factual nexus between their situation and the other former and current employees of Mr. Chow. The Complaint shows that the named plaintiffs and the members of the collective action are similarly situated since all of these individuals worked as captains, waiters, bartenders, and busboys at Mr. Chow on or since May 7, 2004, and performed duties serving restaurant patrons. Moreover, all of the captains, waiters, bartenders, and busboys were subject to the same policy of defendants filing to compensate its employees at the federal and state minimum wage, making unlawful deductions from employees' wages by diverting the tips of the tipped employees to non-tipped employees, and improperly failing to pay employees for all hours worked, including overtime hours. Plaintiffs have also submitted an Affidavit from Marin Alexandru, which along with the allegations in the complaint demonstrate that Mr. Chow had a practice of depriving its employees of tips that they earned at Mr. Chow, failing to pay minimum wage for time worked, and failing to pay employees the correct overtime premium for hours worked in excess of 40 hours per week. Therefore, plaintiffs have made the "minimal showing" required to have this case certified as a collective action.

## E.   Plaintiffs' Case is Appropriate for Court-Facilitated Notice

The Supreme Court has held that the benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-La Roche*, 493 U.S. at 170. District courts are encouraged to become involved in the notice process to ensure "timely, accurate, and

informative" notice and to help maintain control of the litigation. *Id.* at 171-72. The Court in *Hoffman-La Roche* established that a court-approved notice to potential plaintiffs in an FLSA collective action is proper in "appropriate cases" according to the "discretion" of the district court. *Id.* at 169-70. This case is an appropriate case to send court-approved notice.

Here, court action is needed because the claims of the potential opt-in plaintiffs are being extinguished or diminished every day due to the running of the statute of limitations. *Redman v. U.S. West Bus. Res., Inc.,* 153 F.3d 691, 695 (8th Cir. 1998); *Hoffman,* 982 F. Supp. at 260. Unlike Rule 23 class actions, in § 216(b) collective actions, the statute of limitations for those who have not filed consent forms is not tolled with the commencement of the action. *Id.* As a result, the statute of limitations continues to run on each individual's claim until they file consent with the Court. *Id.* Thus, every day that passes is a day of damages each potential plaintiff will be unable to recover.

In addition, court-authorized notice providing current and former employees of Mr. Chow with an opportunity to pursue their claims in one forum will create significant judicial economies. A single action benefits the judicial system by resolving this case collectively. *See Hoffman-La Roche,* 493 U.S. at 170. Such collective adjudication will prevent the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources. Requiring plaintiffs and the potential opt-in plaintiffs to file separate cases would not be an efficient use of resources.

F.      **Plaintiffs' Proposed Notice is Accurate and Informative**

Where the named plaintiffs and potential plaintiffs are determined to be similarly situated, a district court will certify the case as a collective action, and authorize the plaintiffs to send a collective action notice to putative class members. *See,*

*e.g., Hoffman-La Roche v. Sperling,* 493 U.S. 165, 70 (1989) ("The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising form the same alleged discriminatory activity."); *Masson v. Ecolab, Inc.,* 2005 U.S. Dist. LEXIS 18022, at *36 (S.D.N.Y. 2005) ("Section 216(b) of FLSA authorizes an employee to sue his employer ... on behalf of himself and other employees 'similarly situated'"); *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003) (noting "the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff."); *Foster v. The Food Emporium,* 2000 U.S. Dist. LEXIS 6053, at *3-5 (S.D.N.Y. Apr. 26, 2000) (plaintiffs similarly situated where they alleged that they worked at stores owned by defendants that they 'are (or were) hourly employees,' and identified 'certain practices' that were 'common' to all of defendants' stores).

Annexed to the Affidavit of Marin Alexandru as Exhibit A is plaintiffs' proposed judicial notice. As required, it is "timely, accurate, and informative." *Hoffman-La Roche,* 493 U.S. at 172. The notice defines the class to include captains, waiters, bartenders, and busboys who worked at Mr. Chow since May 7, 2004. While defendants have objected to this case being certified as a collective action, they have not noted any objection to the substance of the proposed notice. It bears pointing out that plaintiffs' proposed collective action notice is limited to those employees similarly situated to the named plaintiffs, and is based upon the collective action notice approved by Judge Crotty in *Duchene v. Michael L. Cetta, Inc. d/b/a Sparks Steak House,* No. 06 CV 4576 (S.D.N.Y.) (PAC), and by Judge Holwell in *Sayed Khalil et al. v. The Original Homestead Restaurant, Inc., d/b/a Old Homestead, et al.,* No. 07 CV 695 (S.D.N.Y.) (RJH). Notably, like here, the *Duchene* and *Khalil* cases also involved an FLSA collective action. This notice will enable all similarly situated employees to make an informed decision as to whether they will opt-in to the collective action.

11

## POINT II

### DEFENDANTS SHOULD BE COMPELLED TO PROVIDE THE NAMES AND ADDRESSES OF SIMILARLY SITUATED EMPLOYEES

In order to provide potential class members with the opportunity to join the collective action, the court should also direct the production of information of current and former employees of Mr. Chow who are similarly situated to the named plaintiffs, so that the collective action notice can reach its intended recipients. *Masson*, 2005 U.S. Dist. LEXIS 18022, at *46-47 (discovery of names and addresses of those current and former employees who are potential plaintiffs appropriate "to insure that employees receive accurate and timely notice concerning the pendency of the collective action"). As is often also done, plaintiffs, therefore, request that, in addition to entering an order approving their proposed notice, this Court also order defendants to produce to plaintiffs the following within ten days of its Order:

> A list, in electronic format, of all persons employed by defendants as captains, waiters, bartenders, and busboys, from May 7, 2004 to the present including: name, address, telephone number, dates of employment, and job title.

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in the Affidavit of

Marin Alexandru, plaintiffs respectfully request that this Court:

(1)    Authorize this case to proceed as a collective action;

(2)    Order defendants to produce to plaintiffs a list, in electronic format, of all persons employed by defendants as captains, waiters, bartenders, and busboys, from May 7, 2004 to the present including the employee's name, address, telephone number, dates of employment, and job title, within ten days of the Court's Order; and

(3)    Authorize the mailing of the proposed notice to all potential opt-in plaintiffs employed by defendants from May 7, 2004 to the present.

Dated:  New York, New York
            October 26, 2007

BERKE-WEISS & PECHMAN LLP

By: _____
        Louis Pechman, Esq. (LP – 6395)
        488 Madison Avenue, 11th Floor
        New York, New York 10022
        (212) 583-9500
        *Attorneys for Plaintiffs*


To:    William A. Carmell, Esq. (WC – 7648)
        Ford & Harrison LLP
        100 Park Avenue, Suite 2500
        New York, New York 10017
        (212) 453-5942
        *Attorneys for Defendants*