Philip K. Davidoff (PD-7488)
William A. Carmell (WC-7648)
Alyson C. Bruns (AB-7554)
Ford & Harrison LLP
100 Park Avenue
Suite 2500
New York, New York 10017
(212) 453-5900
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

–––––––––––––––––––––––––––––––––––––– X

COSTIN    DUMITRESCU,    MARIN    :
ALEXANDRU, and JOSIP RICOV, on behalf    :
of themselves and all others similarly situated,    :
    :
    Plaintiffs,    :
    :    Civil Action No. 07-3601 (PKL) (HBP)
    -against-    :
    :
MR. CHOW ENTERPRISES, LTD., T.C.    :
VENTURES, INC., MC TRIBECA LLC,    :    ECF CASE
MR. CHOW NEW YORK ENTERPRISES,    :
INC., WILDMAN GROUP, INC., and    :
MICHAEL CHOW, individually,    :
    :
    Defendants.    :
    :

–––––––––––––––––––––––––––––––––––––– X

## DEFENDANTS' MEMORANDUM OF LAW OPPOSING PLAINTIFFS' MOTION FOR COLLECTIVE ACTION CERTIFICATION

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................ 1

**BACKGROUND**

    **A.** The Mr. Chow Experience................................................... 2

    **B.** Mr. Chow's Tip Pool.......................................................... 4

**ARGUMENT**................................................................................ 6

**I.** Plaintiffs Do Not Meet the Minimum Burden Necessary for Certification of a Collective Action Because Mr. Chow's Tip Pool Does Not Violate the FLSA................................ 6

    **A.** Tip Pooling Under the FLSA................................................ 6

    **B.** The Maitre D's as Service Providers Are Entitled to Participate in the Tip Pool........... 8

**II.** The Proposed Plaintiffs Are Not Similarly Situated for a Collective Action ...................... 11

**III.** The Plaintiffs Fail to Show that Others Will Join the Lawsuit.................................... 12

**IV.** Plaintiffs' Notice is Inappropriate Because It Is Too Broad ...................................... 13

**CONCLUSION** ............................................................................. 14

## INTRODUCTION

Defendants[1] submit this Memorandum of Law in opposition to Plaintiffs' Motion for Collective Action Certification.

In their Complaint, Plaintiffs allege, *inter alia,* that Mr. Chow failed to pay them the appropriate minimum wage and expropriated tips in violation of the Fair Labor Standards Act. ("FLSA"). Plaintiffs purport to bring such claims on behalf of themselves and "all current and former captains, waiters, bartenders and busboys" at Mr. Chow's two New York City restaurants – Mr. Chow 57th Street and Mr. Chow Tribeca. Defendants submit that Plaintiffs fail to produce any evidence that Mr. Chow violated the Fair Labor Standards Act ("FLSA") and thus a collective action should not be certified at this time.

While Plaintiffs cast their claim against Defendants as a failure to pay the applicable minimum wage, the putative members of any potential collective action have undoubtedly received compensation well in excess of the applicable minimum wage.[2] Hence, the gravamen of Plaintiffs' allegations in support of their motion is that "[a]t Mr. Chow, managers who do not fall within the category of 'tipped employees' under the FLSA should not have received any share from the tip pool." *See* Plaintiffs' Memorandum of Law in Support of their Motion for Collective Action Certification (hereinafter "Plaintiffs' Memo of Law"), at p. 3. Similarly, Plaintiffs assert "hosts/hostesses at Mr. Chow also share in the tip pool even though they are not

---

[1]    In their Complaint, in addition to Michael Chow individually, Plaintiffs name various corporate entities as defendants. Defendants aver that several of these named entities are not proper parties. This is, however, beyond the scope of Defendants' opposition to the instant motion to conditionally certify this action as an FLSA collective Action. Accordingly, for ease of reference and solely for purposes of this motion, the term "Mr. Chow" as used herein refers, collectively, only to the corporate entities that formerly employed Plaintiffs and putative class members –  T.C. Ventures, Inc. and MC Tribeca LLC.

[2]    Plaintiffs' "minimum wage" claim arises not from their lack of substantial compensation, but rather from the purportedly improper "tip credit" claimed by Mr. Chow. Under the FLSA, an employer is permitted to count tips received by its tipped employees as wages, but the employer must pay not less than $2.13 an hour in "direct" wages. It is indisputable that each captain, server, assistant server, runner and bartender in the putative class received not less than $2.13 an hour in direct wages and sufficient tips from the tip pool to far exceed the applicable minimum wage.

'tipped employees' and do not provide service to customers." *Id.* According to Plaintiffs, the inclusion of these alleged "managers" and "hosts/hostesses" in the tip pool tainted the tip pool and rendered invalid the "tip credit" claimed by Mr. Chow.

As discussed more fully below, Plaintiffs' allegations are insufficient to meet their burden with respect to the conditional certification of a FLSA collective action.

## BACKGROUND

### A.     The Mr. Chow Experience

Mr. Chow opened its first New York restaurant – Mr. Chow 57th Street – in 1979. In May 2006, Mr. Chow expanded its New York presence with the opening of a second restaurant – Mr. Chow Tribeca.

"To eat at a Mr. Chow restaurant is to participate in a roving party, one that has migrated through four decades, three continents, and an awful lot of soup dumplings. In his L.A. restaurant, Mae West got a standing ovation for just finishing her dinner." *See* Amy Larocca, *The Sayings of Chairman Chow*, New York Magazine, May 1, 2006, http://nymag.com/restaurants/features/16863/. "For Chow, restaurants are complex and long-running installations set in theaters of his own careful design. The movements of his waiters — filling glasses, changing tablecloths, delicately deboning rare, fresh pieces of fish — are parts in an elaborate symphony of which he is, ultimately, the conductor. *Id.*; see also Complaint, ¶ 2. As described on Mr. Chow's website, Michael Chow is the "stage director of sold out performances that unfold seamlessly across continents; each within fine-dining theatrical venues – ultimately known as Mr. Chow London, New York, Tribeca and Beverly Hills."

In this theatrical milieu, a team of front of the house service providers caters to customers. This team includes hostesses, captains, servers, assistant servers, runners, bartenders and the indisputable "star of the room" – the maitre d'.[3] *See* Declaration of Michelle Chun, dated December 21, 2007, at ¶ 3 (hereinafter "Chun Decl., ¶ __"). Mr. Chow employs one maitre d' in each of its two New York restaurants. During all times relevant to this action, Brian Muratovic has been the maitre d' at Mr. Chow 57th Street and Gaspare Como (or Cristian Belmond) has been the maitre d' at Mr. Chow Tribeca.[4] Chun Decl., ¶ 4.

As maitre d's, Mr. Muratovic and Mr. Como are called upon to regularly to perform the same work required of all front of the house staff (*i.e.,* captains, servers, assistant servers, runners, and hosts/hostesses), with the added responsibility to "work the room" and see to it that all of Mr. Chow's clients' needs – escorting them to their tables, speaking with them about the food and the restaurant, taking orders, delivering food and drinks, setting up and clearing their tables, etc. – are met. Chun Decl., ¶ 5. In short, the maitre d' is the host of the Mr. Chow party and is at the heart of the Mr. Chow service team.

On the other hand, Mr. Chow's maitre d's have few, if any, "managerial" functions. While they are undoubtedly the senior most servers on the floor and exercise some "supervisory"

---

[3]    In their Complaint, Plaintiffs incorrectly refer to the maitre d's as "managers." In any case, their job title has no bearing on the substantive issues in this action. It is the job duties of the maitre d's that govern. For example, in *Morgan v. Speak Easy, LLC*, 2007 LEXIS 69589 at *50 (N.D. Ill. Sept. 20, 2007), the Court held that a restaurant employee whose business card identified her as a "manager" was nonetheless properly included in the tip pool based on her job duties. Likewise, the Court in *Chan v. Triple 8 Palace*, Inc., 2006 U.S. Dist. LEXIS 15780 (Mar. 30, 2006), held that plaintiffs failed to show that defendant violated tip sharing restrictions by sharing tips with employees who carried business cards indicating they were managers and who had some supervisory responsibilities. Moreover, the Court found that while the plaintiffs listed a number of duties they believed made the employees in question employers and thus unable to share in tips, "they do not adequately explain how and to what extent these facts demonstrate that [these employees] 'possessed the power to control' the plaintiffs." *Id.* at *62.

[4]    Since its opening in May 2006, other than for a brief period, Gaspare Como has been, and is presently, maitre d' at Mr. Chow Tribeca. During those times when Mr. Como was not maitre d', Cristian Belmond, a captain, performed as maitre d' at Mr. Chow Tribeca.

oversight over other front of the house staff,[5] they do not have unilateral authority to hire or fire employees, nor do they have control over the manner in which the employees are compensated. Chun Decl., ¶ 6.

In this regard, Mr. Alexandru's disingenuous characterization of Mr. Como as "responsible for the management of the restaurant and providing extremely limited table service to employees" (see Affidavit of Marin Alexandru, ¶ 5), is not only fallacious, but so utterly lacking in substance as to be insufficient to support collective action certification. Indeed, it is this single sentence in the affidavit of Mr. Alexandru that provides the sole evidentiary basis in support of their request for conditional collective action certification. That is, it is Mr. Como's (and his counterpart at Mr. Chow 57th Street, Mr. Muratovic) alleged inclusion in the tip pool that provides the basis for the Plaintiffs' lawsuit and, more immediately, their request for conditional collective action certification and court-supervised notice.

Defendants submit that this Court should decline Plaintiffs' invitation at this juncture to exercise its discretion and certify this collective action on such an ambiguous (and indeed erroneous) statement. See, e.g., Lentz v. Spanky's Restaurant II, Inc., 491 F. Supp. 2d 663, 672 (N.D. Tex. 2007) (denying plaintiff waiter's motion for notice to potential class members in his FLSA action alleging illegal tip pooling, holding "in exercising its discretion, the Court finds that Plaintiff has failed to show that notice is required under the circumstances of this case.").

### B. Mr. Chow's Tip Pool

Pre-May 2006

Prior to May 2006, the entire front of the house service team – the maitre d', captains, servers, assistant servers, hostesses, runners and bartenders – participated in the tip pool at Mr.

---

[5]    Similarly, other front of the house staff, including Plaintiffs, have (and had) such "supervisory" responsibilities inasmuch as captains "supervise" servers, servers "supervise" assistant servers, etc.

Chow 57th Street. Chun Decl., ¶ 7. Not included in the tip pool were those employees that did not service customers, such as chefs, dishwashers, porters and office staff. *Id.*

Prior to May 2006, all tips were pooled together and distributed in their entirety to the front of the house service team based on a point system referenced in paragraph 31 of the Complaint. Chun Decl., ¶ 8. Each service employee was designated a number of points depending on such factors as his or her position and seniority. *Id.* Each point was equivalent to a percentage of the tip pool. *Id.* Such tip pooling arrangements in the restaurant industry are commonplace and recognized as lawful. *See, e.g., Morgan v. Speak Easy, LLC*, 2007 U.S. Dist. LEXIS 69589 at *47-51 (N.D. Ill. Sept. 20, 2007) (holding service employees, including hosts and supervisors, were lawfully included in pro rata tip pool).

Post-May 2006

At or around the time Mr. Chow Tribeca opened in May 2006, Mr. Chow established a new pay practice for the maitre d's in its New York restaurants. Chun Decl., ¶ 9. At the newly opened Mr. Chow Tribeca, Mr. Chow determined that the maitre d' would receive an annual salary and not be eligible to participate in the tip pool. *Id.*

Similarly, at Mr. Chow 57th Street, Mr. Chow determined that the maitre d', Brian Muratovic, would cease participating in the tip pool and also receive an annual salary. Chun Decl., ¶ 10. Thus, contrary to the allegations in Plaintiffs' Complaint, while Mr. Chow legitimately could have continued to include these maitre d's in the respective tip pools, it did not do so, choosing instead to establish a uniform salary for both of its maitre d's.

Among other things, Mr. Chow's imposition of a new mandatory 20% service charge for all parties of six or more supported the annual salaries of the maitre d's.[6] Chun Decl., ¶ 11.

---

[6]    At all relevant times, Mr. Chow has imposed a mandatory 20% service charge for private parties and special events. In its discretion, Mr. Chow distributed 100% of these service charges to front of the

5

Putting the service charge towards an employee's salary is entirely lawful because it is well settled that an employer has "complete discretion" in choosing the manner in which a mandatory service charge is used, and it is not part of the servers' tip income. *DOL Field Operations Handbook*, section 30d03; *see also Mechmet v. Four Seasons Hotels, Ltd.* 825 F.2d 1173, 1177 (7th Cir. 1987) ("service charge is not a tip, since it is not discretionary with the customer").

It bears noting that Mr. Chow does not retain any service charges for "the house," even though it is within its rights to do so. Chun Decl., ¶ 12. Rather, consistent with its pre-May 2006 practice, Mr. Chow calculates a sum *equal to* the maitre d's' *former* share under the tip pool point system and any service charges other than that sum are then distributed to the remainder of the entire front of the house service team via the tip pool. *Id.*

In short, Mr. Chow's tip pool is, and has been, entirely consistent with applicable law. Moreover, since May 2006, any reasonable argument concerning the purportedly unlawful participation of maitre d's in the respective Mr. Chow tip pools in any event has been eliminated.

## ARGUMENT

**I.**     **Plaintiffs Do Not Meet the Minimum Burden Necessary for Certification of a Collective Action Because Mr. Chow's Tip Pool Does Not Violate the FLSA**

### A. Tip Pooling Under the FLSA

Tip pooling among employees who customarily receive tips is entirely permissible under the FLSA. *See* 29 C.F.R. § 203(m)(2); *see also DOL Field Operations Handbook*, section 30d04(a). Employees entitled to participate in a tip pool are those that participate in servicing customers. *Id.* Moreover, there is no requirement that the employees who share in the tip pool

---

house staff via the tip pool. Beginning in May 2006, Mr. Chow began imposing a mandatory 20% service charge for parties of six or more. Mr. Chow informs the customer of these service charges by printing them on the menus, on patrons' checks and, in the case of private parties and events, on the written proposals to the customer.

themselves receive tips from customers. *Id.* To be sure, the restaurant industry from coast-to-coast has long accommodated the practice of tip pooling. *Leighton v. Old Heidelberg, Ltd.*, 219 Cal. App. 3d 1062, 1067 (Cal. App. 1990). The rational is this:

> An employer must be able to exercise control over his business to ensure an equitable sharing of gratuities in order to promote peace and harmony among employees and provide good service to the public. To deprive a restaurateur of the ability to regulate and control the conduct of his own business, leaves the door open to anarchy in the restaurant industry. It is for this very reason that employer mandated tip pooling among employees has been a long standing practice establishing a policy in the industry which permits the employer to operate a well run, well ordered restaurant business.

*Id.* at 1071.

In order to justify conditional certification of a collective action under the FLSA, Plaintiffs first must make a colorable showing that they have been the victims of a single policy or plan imposed by Defendants *that violates the FLSA* and that there exists a class of "similarly situated" employees affected by such an unlawful plan. *See* 29 U.S.C. §216(b); *see also Jacobs v. N.Y. Foundling Hosp.*, 2007 U.S. Dist. LEXIS 27710, at *39-40 (E.D.N.Y. 2007). To meet this threshold, a plaintiff must make a modest factual showing sufficient to demonstrate that s/he and potential plaintiffs together were the victims of a common policy or plan that violated the law. *Jackson v. N.Y. Tel. Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995); *see also Barfield v. New York City Health and Hospital Corp.*, 2005 U.S. Dist. Lexis 28884, at *1 (S.D.N.Y. 2005); *Realite v. Ark Restaurants Corp.*, 7 F. Supp 2d 303, 306 (S.D.N.Y. 1998).

While plaintiffs' burden at this stage is light, it is not nonexistent. Plaintiffs have simply failed to make even a "modest factual showing" that Mr. Chow's tip pool violates the FLSA and for this reason alone a collective action should not be certified at this time. "To allow certification on a claim that has never been determined as a violation of the FLSA would unnecessarily burden all parties." *Lentz v. Spanky's Restaurant II, Inc.*, 491 F. Supp 2d 663, 670 (N.D. Tex. 2007) (denying the plaintiff waiter's motion for notice to potential class members because there was no precedent stating that employees who prepare plates in the kitchen, with whom plaintiff alleged defendants illegally forced him to share tips, did not customarily receive tips).

## B. The Maitre D's  as Service Providers Are Entitled to Participate in the Tip Pool

While prior to May 2006 and the opening of Mr. Chow Tribeca, Mr. Muratovic participated in the tip pool at Mr. Chow 57th Street, his participation was entirely consistent with applicable law, as all service employees are entitled to share equitably in tips left by patrons. *See, e.g., Louie v. McCormick and Schmick's Restaurant Corp.*, 460 F. Supp. 2d 1153, 1160 (C.D. Cal. 2006) (holding that tips may be shared among service employees and noting the "inequity" of a "system that deems all gratuities left by tipping patrons to be the exclusive property of the servers who wait on the tipping patrons' tables").

The FLSA prohibits "employers" from participating in employee tip pools. *See* 23 U.S.C. § 203(m); *Morgan v. Speak Easy, LLC*, 2007 U.S. Dist. LEXIS 69589 at *46 (N.D. Ill. Sept. 20, 2007). As maitre d's, Mr. Muratovic and Mr. Como do not serve as "managers" in the familiar sense, but devote the vast majority of their time to directly servicing customers by greeting them when they arrive, walking them to their tables, conversing with them about the

menu, taking drink orders, delivering food and drinks, busing tables and more.[7]  Courts have had

no trouble finding that employees with duties similar to those performed by Mr. Muratovic and

Mr. Como, and indeed less service intensive, are entitled to share in tip pools.

For instance, in *Dole v. Continental Cuisine, Inc.*, 751 F. Supp. 799 (E.D. Ark. 1990), the

Court held that the maitre d' was properly included in the tip pool under the FLSA.  The maitre

d' in *Dole* performed such tasks as greet and seat customers, describe specials, serve drinks,

interview applicants for server positions, and recommend which persons should be hired and

fired. *Id.* at **2.

Another example is *Morgan v. Speak Easy LLC*, 2007 U.S. Dist. LEXIS 69589 (N.D. Ill.

2007), where the Court found that although the "senior servers" had responsibility for "directing

and supervising employees' work, handling complaints, operating the restaurants' safes;

handling money; completing the restaurants' nightly closing forms; sending employees home,

taking inventory and maintaining the restaurants' cleanliness," nonetheless they were "tipped

employees" within the meaning of the FLSA and not "employers."  The Court held that they had

sufficient customer interaction to establish that they were engaged in an occupation in which

they "customarily and regularly received tips" inasmuch as they "helped serve food and drinks to

tables, greeted customers, and checked on tables during the dinner service."

In *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F. 3d 294 (6th Cir. 1998), the Sixth

Circuit held that "hosts" properly shared in a tip pool "because they sufficiently interact with

customers in an industry (restaurant) in which undesignated tips are common."  The Court

explained that while the hosts were not "the primary customer contact," they had "more than de

minimis interaction with the customers" sufficient to qualify them for tips.

---

[7]    While Mr. Como and Mr. Muratovic directly service customers, it should be noted that a restaurant
employee does not have to provide direct service to the table to share in the tip pool.  *See Louie*, 460
F. Supp. 2d at 1158-59.

Further, in *Louis v. McCormick & Schmick*, 460 F. Supp. 2d 1153, 1160-63 (C.D. Cal. 2006), the Court recognized that *service employees* of all types are entitled to share in a tip-pooling arrangement even if individually they were not the ones to actually wait on the customer because restaurants should be allowed to implement such a widespread practice to ensure that all service employees share equitably in gratuities.

In short, Mr. Chow's maitre d's spend the overwhelming majority of their time on the restaurant floor attending to customers.    They do not have significant managerial or administrative responsibilities.  Indeed, Mr. Chow employs a corporate staff that is responsible for hiring and firing employees and managing all aspects of its restaurants, including its payroll practices.  Chun Decl., ¶ 6.  Accordingly, Mr. Muratovic's participation in the tip pool prior to May 2006 was entirely lawful.  Moreover, even assuming *arguendo* that Mr. Muratovic and Mr. Como continued participating in the tip pools, which they did not, such participation would again be entirely lawful.

In addition, it is based on the allegedly improper inclusion of the two maitre d's in Mr. Chow's tip pools that Plaintiffs seek to certify a collective action on behalf of "all current and former captains, waiters, bartenders and busboys" at Mr. Chow from March 7, 2004 *to the present*.  As noted above, however, Mr. Chow's maitre d's at both New York locations have not been participants in the tip pools since May 2006.  Chun Decl., ¶ 9.  Thus, even if the Court were to credit Plaintiffs' unsupported allegations as to the nature of the maitre d's job duties, there is no factual basis whatsoever to support the inclusion in the proposed "class" of "captains, waiters, bartenders and busboys" hired after May 2006, from which point the maitre d's no longer participated in the respective tip pools.  In short, such employees clearly are not "similarly situated" to previously hired "captains, waiters, bartenders and busboys."

As noted above, Gaspare Como, Mr. Chow Tribeca's maitre d' and the only person Plaintiffs specifically identified as an employee who should not have been permitted to participate in the tip pool (Affidavit of Marin Alexandru ¶ 5), *is not now, nor while maitre d' has he been in the past*, a participant in the Mr. Chow Tribeca tip pool. Rather, Mr. Como is paid a salary by the restaurant derived, in whole or in part, from mandatory service charges imposed by Mr. Chow Tribeca in accordance with applicable law. "A compulsory charge for service, such as 10 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip, and even if distributed by the employer to his employees cannot be counted as a tip." 29 C.F.R. § 531.55. "The amounts received [in service charges] from customers are the employer's property, not [the employee's], and do not constitute tip income to the employee." *Id.*

Defendants submit that, based on the foregoing, Plaintiffs' motion for conditional certification should be denied because there has been no showing whatsoever, or at the very least an insufficient showing, that Mr. Chow had a common policy or plan that violated the FLSA.

## II. The Proposed Plaintiffs Are Not Similarly Situated for a Collective Action

While the standard for finding plaintiffs similarly situated admittedly is a lenient one, under the FLSA "the court still requires at least 'substantial allegations that the putative class members were together the victims of a single, decision, policy, or plan infected by discrimination.'" *H&R Block, Ltd. v. Houdsen*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (citing *Sperling v. Hoffmann-LaRoche*, Inc., 118 F.R.D. 392, 407 (D. N.J. 1988)). The burden is on the plaintiffs to show that they are sufficiently similarly situated to the opt-in plaintiffs in order to

maintain a collective action under the FLSA. *See ABC Carpet and Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

Here, Plaintiffs seek to conditionally certify a collective action that includes employees from Mr. Chow's two New York restaurants – Mr. Chow 57th Street and Mr. Chow Tribeca. Plaintiffs allege that the maitre d's at both of these restaurants should not have been included in the tip pool and that including the maitre d's in the tip pool improperly deprived other service employees of tips.

However, employees of Mr. Chow's New York restaurants are not similarly situated to the extent that those hired after the May 2006 opening of Mr. Chow Tribeca and the change in maitre d' compensation practices at Mr. Chow's New York restaurants were not employed under circumstances similar to those employed by Mr. Chow 57th Street before that time.

More than conclusory allegations that the potential opt-in plaintiffs are similarly situated are required for Plaintiffs to meet their burden at this stage. Plaintiffs have submitted but a single affidavit in support of their motion. In that affidavit, the affiant cites as its sole example of an employee that should not be in the tip pool, an employee that is NOT in the tip pool, Mr. Como. *See, e.g., Parker v. Rowland*, 492 F. Supp. 2d 1159, 1164-67 (D. Minn. 2007): *see also, Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 252 (M.D. Tenn. 1996) (considering number of affidavits submitted). Plaintiffs' allegations and evidentiary support are simply insufficient to grant collective action certification.

## III.  The Plaintiffs Fail to Show that Others Will Join the Lawsuit

Assuming, *arguendo,* the group of employees Plaintiffs seek to certify were similarly situated, it is still not enough to support collective action certification. "[A] plaintiff must do

more than show the mere existence of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit." *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007); *see also Mackenzie v. Kindred Hosps. E., LLC*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003). Here, the three plaintiffs offer only two other "Consent to Sue" forms in addition to their own despite Plaintiffs' claim that there are approximately 100 employees that are eligible to join the putative collective action. *See* Affidavit of Marin Alexandru, ¶6.

Tellingly, of these two additional "Consent to Sue" forms, one is from a former employee, Tomas Aviles, who is ineligible to join the collective action. Mr. Chow's records indicate that Mr. Aviles was a busboy at Mr. Chow from April 2, 2000 through July 21, 2003. Chun Decl., ¶ 13. Given that his employment ended prior to May 2004, the statute of limitations on any possible FLSA claim has run. *See* 29 U.S.C. § 255. Accordingly, his "Consent to Sue" provides a stark example of the weakness in Plaintiffs' showing as to the interest of other potential plaintiffs in joining the lawsuit.

Indeed, there simply is no evidence that more than a nominal number of present and former employees will seek to join the lawsuit. To certify a collective action when there is insufficient support to do so prior to its certification "would be an exercise in futility and wasted resources for all parties involved." *Basco v. WalMart Stores, Inc.*, 2004 U.S. Dist. LEXIS 12441 at *14 (D. LA. July 1, 2004).

## IV.  Plaintiffs' Notice is Inappropriate Because It Is Too Broad

Plaintiffs request that the Court go back three years from the date they filed their complaint is for too long a period because "[o]rdinary violations of the FLSA are subject to the

general 2-year statue of limitations." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988). For the three-year exception to apply, the employer's conduct must be willful. *See, e.g.*, *id.*; 29 U.S.C. § 255(a). An employer's actions are "willful" where "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin*, 486 U.S. at 133. It is plaintiffs' burden to show that the violation was willful. *See, e.g.*, *Walton v. United Consumers Club, Inc.*, 786 F.2d 3093, 308 (7th Cir. 1986). As discussed above, Plaintiffs have no evidence that Mr. Chow did anything unlawful and they certainly offer no proof that Mr. Chow willfully violated the FLSA. A such, the three-year statute of limitations is not available.

Plaintiffs' proposed notice is also too broad because it includes employees hired by Mr. Chow Tribeca. Yet, as discussed above, Mr. Chow never paid its Mr. Chow Tribeca maitre d' from the tip pool. Thus, it is inappropriate to send notice to employees hired at Mr. Chow Tribeca. Similarly, it is inappropriate to send notice to *any* employees of Mr. Chow 57th Street or Mr. Chow Tribeca hired after May 2006.

## CONCLUSION

For the forgoing reasons, Defendants submit that Plaintiffs' Motion for conditional collective action certification under the FLSA should be denied in its entirety. In the alternative, only a subset of Plaintiffs' purported FLSA collective hired by Mr. Chow *prior to May 2006* should be conditionally certified and receive court-supervised notice of this action.

Dated: New York, New York
December 21, 2007

FORD & HARRISON LLP

By:_____
Philip K. Davidoff (PD 7488)
William A. Carmell (WC 7648)

100 Park Avenue, Suite 2500
New York, New York 10017
(212) 453-5900

Attorneys for Defendants

TO:    Louis Pechman (LP 6395)
Berke-Weiss & Pechman LLP
488 Madison Avenue, 11th Floor
New York, New York 10022
(212) 583-9500

Attorneys for Plaintiffs

NEW YORK:50072.5

15