UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
COSTIN DUMITRESCU, MARIN ALEXANDRU, and JOSIP RICOV, on behalf of themselves and all others similarly situated,

    Plaintiffs,

-against-

MR. CHOW ENTERPRISES, LTD., T.C. VENTURES, INC., MC TRIBECA LLC, MR. CHOW NEW YORK ENTERPRISES, INC., WILDMAN GROUP, INC., and MICHAEL CHOW, individually,

    Defendants.
------------------------------------------------------------- X

Civil Action No. 07-3601 (PKL) (HBP)

**DECLARATION OF MICHELLE CHUN**

ECF CASE

    I, Michelle Chun, hereby declare that I am over eighteen years and have personal knowledge of the following facts:

    1.    I am the Chief Operating Officer of the Mr. Chow restaurant establishments.

    2.    Mr. Chow has two restaurants in New York City – Mr. Chow 57th Street that opened in 1979 and Mr. Chow Tribeca that opened in May 2006. Mr. Chow also has restaurants in London and Beverly Hills.

    3.    At Mr. Chow restaurants, a team of front of the house service providers caters to clients. This service team includes the maitre d', captains, servers, assistant servers, runners, bartenders and host/hostesses.

    4.    Mr. Chow employs one maitre d' in each of its two New York restaurants. During all times relevant to this action, Brian Muratovic has been the maitre d' at Mr. Chow 57th Street and Gaspare Como or Cristian Belmond has been the maitre d' at Mr. Chow Tribeca. In this

regard, since its opening in May 2006, other than for a brief period, Mr. Como has been, and is presently, maitre d' at Mr. Chow Tribeca. During those times when Mr. Como was not maitre d', Mr. Belmond, a captain, performed as maitre d' at Mr. Chow Tribeca.

5.  In their current positions, Mr. Muratovic and Mr. Como regularly perform the duties of each separate service position (*i.e.*, captains, servers, assistant servers, runners and hosts), with the added responsibility to "work the room" and see to it that all of Mr. Chow's clients' needs are met. For example, Mr. Muratovic and Mr. Como will escort all customers to their tables, speak with them about the food and the restaurant, take orders, deliver food and drinks, set up and bus tables and more.

6.  Mr. Chow's maitre d's have few, if any, "managerial" functions. While they are the most senior servers on the floor and exercise some supervisory oversight over other servers, they do not have unilateral authority to hire or fire employees, nor do they have control over employee compensation. Indeed, these functions are part of my responsibilities and those of Chris Chun of the corporate staff. In fact, Mr. Chow employs a corporate office staff that is responsible for managing all aspects of its restaurants, including its payroll practices, under my and Chris Chun's supervision.

7.  Prior to May 2006, the entire service team – the maitre d', captains, servers, assistant servers, hosts/hostesses, and bartenders – participated in the tip pool at Mr. Chow 57th Street. Not included in the tip pool were those employees that did not service customers, such as chefs, dishwashers, porters, and office staff.

8.  Prior to May 2006, all tips were pooled together and distributed in their entirety to the entire front of the house service team, including the maitre d', based on a point system. Each

service employee was designated a number of points depending on such factors as his or her position and seniority. Each point was equivalent to a percentage of the tip pool.

9. At or around the time Mr. Chow Tribeca opened in May 2006, Mr. Chow established a new pay practice for the maitre d's in its New York restaurants. At the newly opened Mr. Chow Tribeca, Mr. Chow determined that maitre d' would receive an annual salary and not participate in the tip pool. As a result, the Mr. Chow Tribeca maitre d' has never participated in the tip pool.

10. At this time, Mr. Chow also determined that Mr. Chow 57th Street maitre d', Brian Muratovic, would cease participating in the tip pool and also receive an annual salary.

11. In May 2006, Mr. Chow began adding in its New York restaurants a 20% mandatory service charge to the bills of all parties of six or more. Previously, Mr. Chow had only added a 20% mandatory service charge in the case of private parties and events. The service charges, among other things, support the annual salaries of the maitre d's. Mr. Chow informs it patrons of the service charges by printing it on customers' bills, on its menus, and, in the case of private events, on the event proposal.

12. Mr. Chow does not, and has not in the past, retained any of these mandatory service charges for 'the house." Prior to May 2006, in Mr. Chow's discretion, *all* service charges were distributed to the entire service staff via the tip pool. Following May 2006, but consistent with its pre-May 2006 practice, Mr. Chow calculates and retains from the service charges a sum equal to the maitre d's' former share under the tip pool point system and, in its discretion, distributes all services charges other than that sum to remainder of the entire service team via the tip pool.

13. Tomas Aviles, who submitted a "Consent to Sue," was employed at Mr. Chow Tribeca from April 2, 2000 through July 21, 2003.

14. I hereby declare and state, under penalty of perjury, pursuant to 18 U.S.C.§ 1746, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 21st day of December 2007

_____
Name

NEW YORK:50339.2