Louis Pechman (LP-6395)
Berke-Weiss & Pechman LLP
488 Madison Avenue
New York, New York 10022
(212) 583-9500
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
COSTIN DUMITRESCU, MARIN ALEXANDRU,  :
and JOSIP RICOV, on behalf of themselves  :    07 Civ 3601 (PKL) (HBP)
and all others similarly situated,  :
                                                     :    PLAINTIFFS' REPLY TO
                   Plaintiffs,  :    DEFENDANTS' MEMORANDUM
                                                     :    OF LAW OPPOSING PLAINTIFF'S
                against-  :    MOTION FOR COLLECTIVE
                                                     :    ACTION AND IN FURTHER
MR. CHOW ENTERPRISES, LTD., T.C. VENTURES,  :    SUPPORT OF THEIR
INC., MC TRIBECA, LLC, MR. CHOW NEW  :    MOTION FOR COLLECTIVE
YORK ENTERPRISES, INC., WILDMAN  :    ACTION CERTIFICATION
GROUP, INC., and MICHAEL CHOW,  :
individually,  :    ECF CASE
                                                     :
                   Defendants.  :
-------------------------------------------------------------X

This Memorandum of Law is submitted by plaintiffs in reply to defendants' Memorandum of Law Opposing Plaintiff's Motion for Collective Action and in further support of their Motion for Collective Action Certification, pursuant to 29 U.S.C. § 216(b).

## POINT I

### DEFENDANTS HAVE MADE GROSS MISSTATEMENTS OF FACT IN AN EFFORT TO DEFEAT THE COLLECTIVE ACTION MOTION

The thrust of defendants' argument against certification of this case as a collective action is that the complaint lacks a factual basis. But the affidavit of Michelle Chun which was submitted in support of defendants' position is riddled with false claims that are belied by defendants' own documents.

First, defendants falsely claim that Gaspare Como and Brian Muratovic were employed in the position of "maitre d'." The business card of Mr. Como, however, clearly indicates that Mr. Como is the "Manager" at Mr. Chow. *See* Exhibit A to the Affidavit of Costin Dumitrescu ("Dumitrescu Affidavit"). Likewise, Brian Muratovic is also recognized as a "Manager" by defendants, as evidenced by the November 19, 1998 letter of recommendation for Costin Dumitrescu on Mr. Chow letterhead that was signed by Brian Muratovic, as "Manager." *See* Dumitrescu Affidavit, Exhibit B.

Second, defendants claim that there is added a "20% mandatory service charge to the bills of all parties of six or more." This is also not true as indicated by the attached bills from May 2, 2007. *See* Dumitrescu Affidavit, Exhibit C. On that day, two tables of seven guests had a "Gratuity 20.00%" added to each of the bills. *Id.* Therefore, it is simply not the case that these "gratuities" can be considered in any way, shape, or manner to be "house" money. Indeed, New York State Labor Law explicitly provides that:

> No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, *or retain any part of a gratuity or of any charge purported to be a gratuity for an employee.*

(New York Labor Law § 196-d.) Accordingly, defendants cannot retain any portion of the 20% gratuity.

Moreover, the defendants' suggestion that monies that they themselves label as "gratuities" can somehow lawfully pay for the salaries of Managers Como and Muratovic is also undercut by the fact that Mr. Chow documents clearly identify on defendants' "Daily Tip Distribution" sheet the alleged service charges as *"tips."* These "tips" are placed in the tip pool by management then taken out as "house income." For example, the "Daily Tip Distribution" sheet of Mr. Chow Tribeca for Friday, April 13,

2007 refers to "Total C. Card Tips," "Total Cash Tips," and "Total Tips," from which total the house deducted a 20-point share. Dumitrescu Affidavit, Exhibit D.

In sum, Mr. Chow tells its customers it is collecting the 20% as "gratuity" and refers to this money as "tips" on its own corporate documents. Accordingly, its claim that this 20% is really a "service charge" is simply not true. Regardless of how Mr. Chow backs into the payment of its managers, it is still unlawfully paying these managers from the tip pool of its waitstaff.

## POINT II

### THERE CAN BE NO VALID "TIP POOL" WHERE TIPS RECEIVED BY MANAGERS ARE NOT INCLUDED

Mr. Chow's so called "sold out performances that unfold seamlessly across continents; each within fine-dining theatrical venues," present a completely different factual scenario from the cases relied on by defendants which relate to restaurants located in less cosmopolitan areas all over the country. In this regard, defendants' argument fails to acknowledge that as managers, Mr. Como and Mr. Muratovic (unlike the manager at, for example, an Outback Steakhouse) receive lucrative tips from patrons at the front door. These tips are kept exclusively by the managers and, on occasion, amount to over $1,000 per night. For example, attached is a handwritten note from Mr. Muratovic from January 8, 2004, which indicates that he received $800 in tips at the door (in addition to his $582 cut from the tip pool). *See* Dumitrescu Affidavit, Exhibit E. These additional tips are not included in the tip pool and shared with the other employees at Mr. Chow.

In essence, defendants seek to have a "tip pool" in which money from the waiters goes in, but tips which are given to the managers are exempted. As such, the defendants wish to sanctify a tip pool which is funded entirely with tips earned by the

3

waiters. This situation equates to a one-way street where managers take from the pool but do not give to it. Even if Mr. Chow's managers were lawfully in the tip pool, it is inconceivable that there could be a valid tip-sharing arrangement authorized by the FLSA and New York State Labor Law which is based on waiters' contributing their tips but managers withholding their own.

## POINT III

### MR. COMO AND MR. MURATOVIC PERFORMED MANAGERIAL FUNCTIONS

Defendants claim that Mr. Chow's "maitre d's" have few managerial functions; however, they serve as the only link between Mr. Chow's corporate offices and the waitstaff at Mr. Chow 57th Street and Mr. Chow Tribeca. As noted in the Affidavit of Costin Dumitrescu, at Mr. Chow, two managers had authority over hiring, firing, and scheduling. If any employee needed vacation or sick leave, he had to request it from managers Como and Muratovic. Como and Muratovic had the discretion to make restaurant section and schedule assignments to employees, as well as assigning "dots" and designating employee responsibilities. In addition, they had the power to add to or subtract from points allocated to employees with regard to the tip pool, giving them direct control over employee income.

In sum, the duties of Messrs. Como and Muratovic establish their status as managers, not head servers. Indeed, this case is analogous to *Ayers v. 127 Restaurant Corp.*, 12 F. Supp. 2d 305, 308-09 (S.D.N.Y. 1998), where Judge Chin held that the tip pool violated the FLSA where the general manager, who had authority to suspend, hire, and fire employees and analyze payroll costs, was allowed to participate in the tip pool. The *Morgan* case relied on by defendants is simply not akin to the tip scheme at Mr. Chow. 2007 U.S. Dist. LEXIS 69589. In *Morgan*, the "managers" were really "senior

4

servers," who carried business cards identifying themselves as "managers," but who "had no authority ... over hiring, firing, or scheduling." 2007 U.S. Dist. LEXIS 69589, at * 49.

## POINT IV

### DEFENDANTS DO NOT CONTEST THE VALIDITY OF THE ADDITIONAL CLAIMS OF PLAINTIFFS WHICH WARRANT A COLLECTIVE ACTION

Even if plaintiffs are entirely wrong regarding the tip pool at Mr. Chow, defendants fail to address the other practices which plaintiffs and other similarly situated individuals were or are subject to that violate the FLSA. These include multiple claims which are also sufficient to warrant authorization to proceed as a collective action. Defendants also engaged in a pattern, practice, and/or policy of violating the FLSA by, *inter alia*,:

- improperly deducting points from the tip pool allocation as a form of punishment for a variety of perceived mistakes or instances of insubordination (Compl., ¶ 32);

- improperly failing to reimburse its waiters for their uniforms and for required uniform maintenance costs (Compl. ¶ 50);

- failing to pay employees at minimum wage for time worked including mandatory meetings, time spent shopping for goods for the restaurants, and mandatory performance of jobs outside of their waitstaff responsibilities (Compl. ¶ 39); and

- miscalculating and failing to pay plaintiffs and similarly situated employees the full overtime rate they were entitled to receive. (Compl. ¶ 38.)

In sum, even if defendants are right in their legal argument about the tip pool, they disregard the existence of the other claims of plaintiffs, which also warrant collective action certification.

## POINT V

### PLAINTIFF MUST MEET ONLY A MINIMAL BURDEN IN A MOTION FOR COLLECTIVE ACTION

In an abundance of caution, plaintiffs have set forth in detail facts establishing the validity of their claims. At this stage in litigation, however, the "focus of this inquiry ... is not on whether there has been an actual violation of law." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

It bears emphasizing that courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs are similarly situated. *Damassia v. Duane Reade, Inc.*, 2006 U.S. Dist. LEXIS 73090, *4, *12, *15 (S.D.N.Y. Oct. 5, 2006) ("[T]he merits of plaintiffs' claims need not be resolved at this stage..."); *see also Mazur v. Olek Lejbzon & Co.*, 2005 U.S. Dist. LEXIS 30321, *13 (S.D.N.Y. Nov. 30, 2005) ("Plaintiff need not show an actual violation of the law..."); *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) ("the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here"); *Krueger v. New York Tel. Co.*, 1993 U.S. Dist. LEXIS 9988, *6 (S.D.N.Y. July 21, 1993) ("even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in the case").

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in the Affidavits of Marin Alexandru and Costin Dumitrescu, plaintiffs respectfully request that this Court:

(1)   Authorize this case to proceed as a collective action;

(2)   Order defendants to produce to plaintiffs a list, in electronic format, of all persons employed by defendants as captains, waiters, bartenders, and busboys, from May 7, 2004 to the present including the employee's name,

  address, telephone number, dates of employment, and job title, within ten days of the Court's Order; and

(3) Authorize the mailing of the proposed notice to all potential opt-in plaintiffs employed by defendants from May 7, 2004 to the present.

Dated: New York, New York
   February 4, 2008

            BERKE-WEISS & PECHMAN LLP

            By: _____
            Louis Pechman, Esq. (LP – 6395)
            488 Madison Avenue, 11th Floor
            New York, New York 10022
            (212) 583-9500
            *Attorneys for Plaintiffs*

To: William A. Carmell, Esq. (WC – 7648)
   Ford & Harrison LLP
   100 Park Avenue, Suite 2500
   New York, New York 10017
   (212) 453-5942
   *Attorneys for Defendants*