USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/30/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COSTIN DUMITRESCU, MARIN ALEXANDRU, JOSIP RICOV, on behalf of themselves and all others similarly situated,

   Plaintiffs,

- against -

MR. CHOW ENTERPRISES, LTD., T.C. VENTURES, INC., MC TRIBECA, LLC, MR. CHOW NEW YORK ENTERPRISES, INC., WILDMAN GROUP, INC., AND MICHAEL CHOW, individually,

   Defendants.

OPINION AND ORDER

07 Civ. 3601 (PKL)

**Appearances**

BERKE-WEISS & PECHMAN LLP
Louis Pechman, Esq.
488 Madison Avenue, 11th Floor
New York, New York 10022

Attorneys for Plaintiff

FORD & HARRISON LLP
Phillip K. Davidoff, Esq.
William A. Carmell, Esq.
100 Park Avenue, Suite 2500
New York, New York 10017

Attorneys for Defendant

**LEISURE, <u>District Judge</u>:**

Former employees of two related restaurants allege that their employer violated various provisions of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). The employees now move for court authorization to proceed as a collective action pursuant to 29 U.S.C. § 216(b), approval of their proposed collective-action notice, and an order compelling defendants to disclose the names, addresses, telephone numbers, dates of employment, and job titles of potential opt-in plaintiffs. For the reasons set forth below, plaintiffs' motion is GRANTED.

<u>Background</u>

The practices at two related Manhattan restaurants form the basis of this dispute, one located at 324 East 57th Street, New York, New York, 10022 ("Mr. Chow 57th Street"), and the other at 121 Hudson Street, New York, New York, 10013 ("Mr. Chow Tribeca") (collectively "Mr. Chow"). (Pls.' Compl. ¶ 18.) Plaintiff Costin Dumitrescu ("Dumitrescu") worked as a busboy, waiter, and captain at Mr. Chow 57th Street from September 1995 to February 2006, and then as a captain for Mr. Chow Tribeca until his termination on July 20, 2006. (Pls.' Compl. ¶ 7.) Plaintiff Marin Alexandru ("Alexandru") worked as a captain at Mr. Chow 57th Street from 1999 to February 2006, and then Mr. Chow Tribeca until his resignation in February 2007. (Pls.'

1

Compl. ¶ 8.)  Plaintiff Josip Ricov worked as a bartender at Mr. Chow Tribeca from October 21, 2006 until his termination on March 19, 2007. (Pls.' Compl. ¶ 9.)  Plaintiffs bring their collective-action complaint on behalf of themselves and the approximately fifty to one-hundred captains, waiters, bartenders, and busboys employed at Mr. Chow between May 2004 and May 2007. (Pls.' Compl. ¶ 30.)  In short, plaintiffs claim that defendants, Mr. Chow Enterprises, LTD., T.C. Ventures, Inc., MC Tribeca, LLC, Wildman Group, Inc., and Michael Chow, denied plaintiffs earned tips, minimum wage, overtime, and other wages. (Pls.' Compl. ¶ 20.)

At all times relevant to the present action, Mr. Chow engaged in a tip-pooling practice, whereby all tips were to be collected and redistributed at the end of the night pursuant to a point system -- employees were designated a certain number of points which correlated to their position and tenure at the restaurant. (Pls.' Compl. ¶ 31; Defs.' Ans. ¶ 31; Pls.' Reply Memo. of Law, Ex. D.)  Plaintiffs allege that managers were generally allocated the greatest percentage of the tip pool, despite the fact that managers should not have been included in the tip distribution under the FLSA and NYLL. (Pls.' Compl. ¶¶ 31, 33, 57, 63; Alexandru Aff. ¶ 5.)  On the other hand, defendants maintain that the managers of Mr. Chow 57th Street and Mr. Chow Tribeca were actually maitre d's whose duties were

the same as the captains, waiters, bartenders, and busboys. (Defs.' Memo. of Law at 3-4.)  Their share in the tip pool, according to defendants, thereby comports with the requirements of the FLSA. (Id. at 5.)  Further, Mr. Chow began paying their managers annual salaries at the opening of Mr. Chow Tribeca in May 2006, at which point the managers ceased participating in the tip pool. (Id.)

When Mr. Chow Tribeca opened, Mr. Chow also implemented a mandatory 20% additional charge on bills for parties of six or more people. (Id.; Pls.' Reply Memo. of Law, Ex. C.)  Managers would receive a percentage of the charge equivalent to what they received from the old tip-pooling distribution, and the remainder would be added to the tip pool for tipped employees. (Defs.' Memo. of Law at 6.)  Plaintiffs allege that the 20% charge was, in fact, a gratuity, and thus should only have been distributed among tipped employees. (Pls.' Reply Memo. of Law at 2-3, Ex. C.)  Defendants counter that the 20% charge is not required to be a part of their tipped employees' income, but Mr. Chow chooses to contribute the remainder of the charge to the tip pool. (Defs.' Memo. of Law at 6.)

Additionally, Mr. Chow required waitstaff to perform side-jobs calls "dots," as well as other tasks outside the ambit of general waitstaff duties. (Pls.' Compl. ¶¶ 32, 39.)  Plaintiffs claim that because "dots" -- tasks that included ordering linens

3

and scrubbing the restrooms -- did not involve wait service to customers, it should have been compensated at minimum wage. (Pls.' Compl. ¶ 32.)  Finally, plaintiffs assert that their overtime work was not properly compensated.[1] (Id. at ¶ 38.)

Plaintiffs now move for court authorization to proceed as a collective action, approval of their proposed collective-action notice, and an order directing defendants to produce a information that will enable plaintiffs to contact class members.  Defendants oppose the motion, contending that plaintiffs have failed to show a common policy or plan violating the FLSA. (Defs.' Memo. of Law at 11.)  Further, they argue that plaintiffs and potential opt-in plaintiffs are not similarly situated, that plaintiffs have not shown that others will join the lawsuit, and that plaintiffs' proposed notice is too broad.[2] (Id. at 11-14.)

## Discussion

I.   FLSA Collective Action Standard

A collective action provides efficient adjudication of claims brought by similarly situated employees, whose claims are often small and not likely to be brought on an individual basis.

---

[1] Dumitrescu has also brought claims seeking damages for intentional infliction of emotional distress and assault and battery. (See Pls.' Compl. ¶¶ 43-49; 85-96.)

[2] Because a motion for court authorization of a collective action derives from the FLSA, other parts of the complaint, such as plaintiffs' claims under the NYLL, will not be addressed further in this opinion.

4

See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989); Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007).  In that light, a collective action allows plaintiffs to pool their resources in order to lower individual costs to vindicate rights.  Hoffmann-La Roche Inc., 493 U.S. at 170; Lynch, 491 F. Supp. 2d at 367.  The collective action provision, 29 U.S.C. § 216(b), allows an action

> [A]gainst any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

This language distinguishes a collective action from a class action sought under Federal Rule of Civil Procedure 23.  See Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action. . . ."); see also Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) ("The 'similarly situated' standard for certifying a class action is thus considerably more liberal than class certification under Rule 23.").  A collective action carries three notable features:  (1) a plaintiff must "opt in" to the case by signing a consent and filing it with the court, or will otherwise not be involved; (2) the statute of limitations is

5

tolled only when a plaintiff submits the consent form; and (3) courts may order notice to other potential similarly situated employees to inform them of the opportunity to opt in to the case. Lynch, 491 F. Supp. 2d at 367 (citing Hoffmann-La Roche Inc., 493 U.S. at 173).

A district court's discretion to certify a collective action "comports with the broad remedial purpose of the [FLSA], which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits." Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978). To that end, "[i]t is well settled that district courts have the discretionary power to authorize the sending of notice to potential class members in a collective action. . . ." Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997); see Hoffmann-La Roche Inc., 493 U.S. at 169 ("We hold that district courts have discretion . . . to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."). Indeed, the benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Hoffmann-La Roche Inc., 493 U.S. at 170.

Courts in this district have adopted a two-stage approach to authorizing a FLSA collective action. First, the court looks

at the pleadings and affidavits to find whether the plaintiffs and potential opt-in plaintiffs satisfy the similarly situated requirement. See Lynch, 491 F. Supp. 2d at 368. The burden for demonstrating that the potential plaintiffs are similarly situated is "very low at the notice stage." Id.; see also Damassia v. Duane Reade, Inc., No. 04 Civ. 8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) ("[A] plaintiff's burden at this preliminary stage is 'minimal.'") (quoting Wraga v. Marble Lite, Inc., No. 05 Civ. 5038, 2006 WL 2443554, at *1-2 (E.D.N.Y. Aug. 22, 2006)). Plaintiffs need only make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998); see La Belle Farm, Inc., 239 F.R.D. at 368 (finding plaintiffs' burden met where they relied on their own pleading and declarations to show they were subject to certain practices at defendant's workplace and, to the best of their knowledge, their experience was shared by members of the proposed class); Krueger v. N.Y. Tel. Co., Nos. 93 Civ. 0178, 93 Civ. 0179, 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993) (finding burden met where "plaintiffs' detailed allegations and supporting affidavits 'successfully engage [defendants'] affidavits to the contrary' for purposes of the present motion") (quoting Sperling v. Hoffmann-La Roche, Inc.,

7

118 F.R.D. 392, 407 (D. N.J. 1988)). And because the requirements of Federal Rule of Civil Procedure 23 do not apply to a collective action, it is unnecessary to show of numerosity, typicality, commonality, or representativeness. See, e.g., Lynch, 491 F. Supp. 2d at 369. Moreover, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" at this preliminary step. Id. at 368. If plaintiff demonstrates that class members are similarly situated, the court then authorizes the suit to proceed as a collective action and allows plaintiff to send court-approved notice to potential opt-in plaintiffs. Id.; La Belle Farm, Inc., 239 F.R.D. at 367.

After notice is distributed, the action proceeds as a collective action throughout discovery. Lynch, 491 F. Supp. 2d at 368. Because a collective action requires written consent from opt-in plaintiffs, "it lies within the discretion of a district court to begin its involvement early, at the point of initial notice" in order to ensure that the preparation and distribution of notice is "timely, accurate, and informative." Hoffmann-La Roche Inc., 493 U.S at 171-72. Even if all the plaintiffs "turn out *not* to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in [the] case." Krueger, 1993 WL 276058, at *2; see Gjurovich v.

8

Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003) ("I determine only that notice may be sent to those people who, at this very preliminary stage in the litigation, might be potential plaintiffs. I am not determining that those being notified 'are, in fact, similarly situated' to the Plaintiff, and I make no determination regarding the legal rights and responsibilities of the parties.") (quoting Realite, 7 F. Supp. 2d. at 308).

After discovery, usually in response to a motion by defendant for decertification, the Court enters the second stage of authorizing a collective action by reviewing the collective action certification more rigorously. Lynch, 491 F. Supp. 2d at 368; La Belle Farm, Inc., 239 F.R.D. at 367. If the court then determines that the plaintiffs and other class members are not similarly situated, it may decertify the collective action, thereby dismissing the claims of opt-in plaintiffs without prejudice. Lynch, 491 F. Supp. 2d at 368; La Belle Farm, Inc., 239 F.R.D. at 367. This second review, which also allows the court to modify the certified class, further emphasizes the initial authorization of the collective action as "merely a preliminary finding." Lynch, 491 F. Supp. 2d at 368; see Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

9

II. <u>Plaintiffs' Motion for Court Authorization to Proceed as a Collective Action</u>

Plaintiffs support their motion with allegations that Mr. Chow engaged in various practices affecting all tipped employees, violating the tip practice, minimum wage, and overtime provisions of the FLSA. (Pls.' Memo. of Law at 9.) According to plaintiffs, Alexandru's affidavit along with several pieces of evidence demonstrate that the practices in question involved all Mr. Chow employees, and therefore the captains, waiters, bartenders, and busboys were similarly situated pursuant to 29 U.S.C. § 216(b). (Alexandru Aff. ¶¶ 3-4; Pls.' Reply Memo. of Law, Ex. D.) Defendants have affirmed that Mr. Chow did engage in a tip-pooling practice that involved plaintiffs, potential opt-in plaintiffs, and at least one of the men identified by plaintiffs as a manager. (Defs.' Memo. of Law at 4-5.) Defendants also admit that Mr. Chow waitstaff were required to perform "dots" on Saturdays, and that they had a rotating schedule to report to the restaurant before opening to answer phones and take reservations. (Defs.' Ans. ¶¶ 51-52.)

**A. Merits of Plaintiffs' Claims**

Notwithstanding these concessions, defendants contend that plaintiffs fail to produce any evidence showing that Mr. Chow violated the FLSA. For example, defendants claim that plaintiffs received wages in excess of minimum wage, and that

10

the manager/maitre d' participation in the tip pool complied with FLSA regulations. Further, defendants argue that the managers' allocation from the 20% service charge was in full compliance with the stipulations of the FLSA. Overall, defendants maintain that plaintiffs should not be granted authorization to proceed as a collective action because plaintiffs have not met their burden to show that defendants violated the FLSA.

At this stage, however, the Court applies a fairly lenient standard, and, more specifically, "should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." Lynch, 419 F. Supp. 2d at 368; see also Damassia, 2006 WL 2853971, at *3 ("A court need not evaluate the underlying merits of a plaintiff's claim to determine whether the plaintiff has made the minimal showing necessary for court-authorized notice."); Sbarro, Inc., 982 F. Supp. at 262 ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here."); Gjurovich, 282 F. Supp. 2d at 105 ("Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff. . . ."). Instead, this stage of certification focuses on whether plaintiffs have demonstrated

11

that "they and potential plaintiffs together were victims of a common policy or plan that violated the law." Realite, 7 F. Supp. 2d at 306.

Plaintiffs have adequately met their burden by showing "a factual nexus" between the conditions of their employment and those of other current and former tipped employees of Mr. Chow. Sbarro, Inc., 982 F. Supp. at 262. They demonstrate, and defendants confirm, that each New York location of Mr. Chow employed approximately twenty-five captains, waiters, bartenders, and busboys. Each of these employees was subjected to the same point-allocation practice that corresponded to the percentage of the tips that an employee would receive at the end of the night. Additionally, Mr. Chow required "dots" and rotation of pre-service duties as standard business practice applying to all waitstaff. Accordingly, plaintiffs have shown that they and the potential opt-in plaintiffs are similarly situated "with respect to their allegations that the law has been violated." Young, 229 F.R.D. at 54. Defendants' arguments, which attack the potency of plaintiffs' factual allegations under the FLSA, have no bearing on whether the potential opt-in plaintiffs are similarly situated to the current plaintiffs.

### B. Similarly Situated

Defendants also argue that the motion should fail because those hired after May 2006 "were not employed under the same

12

circumstances similar to those employed by Mr. Chow 57th Street before that time." (Defs.' Memo. of Law at 12.)  In May 2006, when Mr. Chow Tribeca opened, Mr. Chow allegedly began to pay managers at both restaurants salaries instead of including them in the tip pool.  Defendants thus believe any employees hired after May 2006 should not be included in the class of potential opt-in plaintiffs.  Plaintiffs, however, need only show that their positions are "'similar, not identical,'" to the positions held by the potential opt-in plaintiffs. Damassia, 2006 WL 2853971, at *3 (quoting Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1217 (11th Cir. 2001)).  Further, even if Mr. Chow began to pay the maitre d's salaries in May 2006, plaintiffs nevertheless maintain that defendants continued to violate the FLSA in other ways. (Pls.' Reply Memo. of Law at 5.)  For example, plaintiffs believe that managers should not have received a portion of the mandatory 20% gratuity that defendants charged parties of six or more people. (Id. at 2-3.)  In response, defendants ostensibly ask the Court to determine whether the maitre d' position at Mr. Chow is managerial, and whether the 20% charge was gratuity under the FLSA provisions. This would require a premature evaluation of merits. See Damassia, 2006 WL 2853971, at *3; Sbarro, Inc., 982 F. Supp. at 262.  At this stage, plaintiffs sufficiently allege that the employees, before and after the opening of Mr. Chow Tribeca,

13

were all subjected to FLSA violations related to tip-pooling practices, minimum wage, and overtime compensation.

### C. Proof of Others Joining the Lawsuit

Defendants finally argue that plaintiffs' motion should be denied because they have not showed that other former Mr. Chow employees will join the lawsuit. Defendants cite two cases in which courts employed this reasoning in denying plaintiffs' motions for court authorization to proceed as a collective action. See Parker v. Rowland Express, Inc., 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007); Mackenzie v. Kindred Hosps. E., L.L.C., 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003). Those courts demanded that plaintiff "proffer some evidence that other similarly situated individuals desire to opt in to the litigation." Parker, 492 F. Supp. 2d at 1165. At least one Court in this District has indicated that "[p]laintiff is not required to indicate specifically how many potential opt-in plaintiffs may join the suit, nor must an FLSA plaintiff join with other potential plaintiffs at the time a suit is filed in order for a representative action to be pre-certified." Cuzco v. Orion Builders, Inc., 477 F. Supp. 2d. 628, 634 (S.D.N.Y. 2007). Moreover, the plaintiffs in the cases cited by defendant were unable to identify with specificity *any* people who wanted to join the lawsuit, distinguishing them from plaintiffs here. See Parker 492 F. Supp. 2d at 1165 ("Plaintiffs aver that other

14

potential plaintiffs may exist . . . . [T]his is insufficient to satisfy Plaintiffs' burden."); Mackenzie, 276 F. Supp. 2d at 1220 ("[T]he plaintiff admits that he does not know of anyone who wants to join this lawsuit.").

Here, plaintiffs have indicated, and the defendants confirm, that Mr. Chow hired at least fifty other tipped employees who were subjected to the same policies as plaintiffs, two of whom have already come forth expressing interest in joining the suit. (Defs.' Memo. of Law at 13.) Therefore, plaintiffs have adequately demonstrated that there is a class of people potentially interested in joining the collective action.

III. Plaintiffs' Proposed Notice

"No courts have specifically outlined what form court-authorized notice should take, or what provisions notice issued pursuant to § 216(b) should contain." Gjurovich, 282 F. Supp. 2d at 105-06. The Supreme Court specifically abstained from directing the details of notice given under § 216(b), instead allowing district courts to use discretion. Hoffmann-La Roche Inc., 493 U.S. at 170 ("We confirm the existence of the trial court's discretion, not the details of its exercise.")

Plaintiffs present a proposed notice that defendants argue is too broad because it includes potential opt-in plaintiffs beyond the FLSA two-year statute of limitations. Defendants argue that notice to those employed as early as three years

15

prior to the filing of the complaint would only be appropriate if the FLSA violation was willful. (Defs.' Memo. of Law at 13-14.) However, "[w]here wilfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action." La Belle Farm, Inc., 239 F.R.D. at 369. For the reasons discussed above, the Court rejects defendants' additional arguments with respect to the breadth of the notice. (Defs.' Memo. of Law at 14.) Upon its own review of the proposed notice, the Court is satisfied and accepts the provisions as drafted by plaintiffs.

## Conclusion

For the foregoing reasons, plaintiffs' motion for court authorization to proceed as a collective action is GRANTED. Defendants have ten (10) days from the Court's Opinion and Order to provide plaintiffs with "a list, in electronic format, of all persons employed by defendants as captains, waiters, bartenders, and busboys, from May 7, 2004 to the present including the employee's name, address, telephone number, dates of employment, and job title. . . ." (Pls.' Memo. of Law 13.)  Plaintiffs are authorized to mail the proposed notice to the class members, and opt-in plaintiffs will be given one-hundred-and-twenty (120) days from when plaintiffs receive the list from defendants to submit all consent-to-sue forms to this court.  The parties are ORDERED to appear before this Court at 500 Pearl Street, Courtroom 18B for a status conference on July 30, 2008 at 10:30 a.m.

**SO ORDERED.**

**New York, New York**

June **30**, 2008

                                              *Peter K. Leisure*

                                                  U.S.D.J.